**RISSLER & McMURRY CO., a Wyoming corporation, Appellant (Plaintiff),**

v.

**The STATE of Wyoming, Appellee (Defendant).**

No. 95–239.

Supreme Court of Wyoming.

June 5, 1996.

Rehearing Denied July 16, 1996.

John R. Hursh and Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, for Appellant.

William U. Hill, Attorney General, and Larry M. Donovan, Senior Assistant Attorney General, for Appellee.

John A. Sundahl and Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, Cheyenne, for Amicus Curiae Wyoming Contractors Association.

Daniel Heilig of Wyoming Outdoor Council, Lander, Wyoming; and Edward B. Zukoski of Land & Water Fund of the Rockies, Boulder, Colorado, for Amicus Curiae Wyoming Outdoor Council.

Before GOLDEN, C.J., and THOMAS, MACY and LEHMAN, JJ., and W. THOMAS SULLINS, District Judge.

MACY, Justice.

Appellant Rissler & McMurry Co. appeals from the order which dismissed its complaint against Appellee State of Wyoming. Rissler was seeking a judgment for its alleged takings claims and its damages.

We affirm.

## ISSUE

Rissler presents a single issue for our review:

The trial court erred in dismissing the plaintiff's separate temporary and permanent takings claims on the premise that both claims were premature under the provisions of W.S. 35–11–1001(b).

## FACTS

Rissler entered into a ten-year limestone mining lease with the State on July 2, 1989. This lease covers a section of state-owned land located on Bessemer Mountain in Natrona County. Pursuant to the lease, Rissler agreed to comply with all state statutory requirements and valid regulations, which included obtaining a valid mining permit.

On December 17, 1991, Rissler submitted its application for a small mine permit to the Department of Environmental Quality as WYO. STAT. § 35–11–405(a) (1994) requires, seeking permission to mine a 40–acre parcel located within the mining lease area. On March 13, 1992, the Department of Environmental Quality certified that the permit application was complete and suitable for publication. Rissler published its notice of the pending permit in accordance with the statute. The Department of Environmental Quality received numerous written objections during the comment period and, therefore, referred the permit application to the Environmental Quality Council for a formal hearing and determination under the Wyoming Administrative Procedure Act. WYO. STAT. §§ 35–11–406(m)(x) (Supp.1995), –112(a)(iv) (1994).

In April of 1992, a separate proceeding was held, involving a designation petition which was filed for the purpose of having Bessemer Mountain designated as being "rare or uncommon." Following the hearing, the Environmental Quality Council determined that Bessemer Mountain met the criteria for being "rare or uncommon" and so designated it. The Environmental Quality Council then remanded Rissler's permit application to the Department of Environmental Quality, directing it to evaluate the application in light of the "rare or uncommon" designation. Rissler filed a petition for review in the district court, challenging the Environmental Quality Council's determination that Bessemer Mountain met the criteria for being "rare or uncommon." The district court certified the matter to this Court because of the constitutional and procedural questions which were involved and because it was in the best interest of justice and economy. *Rissler & McMurry v. Environmental Quality Council (In re Bessemer Mt.)*, 856 P.2d 450, 451 (Wyo.1993).

Rissler began mining operations in late 1992 on ten acres of the leased land as was allowed under WYO. STAT. § 35–11–401(e)(vi) (1994). On June 23, 1993, the Department of Environmental Quality again certified that the permit application was complete and suitable for publication. The permit application, however, was not complete because paleontology survey results were not included. The Environmental Quality Council dismissed the case without prejudice and remanded the application, directing the Department of Environmental Quality to review the findings of a Rissler-conducted paleontology survey on the area before certifying the application as being complete. The Environmental Quality Council also vacated a scheduled August 19–20, 1993, hearing on the matter.

On July 10, 1993, the Department of Environmental Quality again certified that the permit application was complete and suitable for publication. Numerous objections were again lodged against the permit application, and the Department of Environmental Quality again forwarded the application to the Environmental Quality Council for a formal hearing. Pursuant to the contested case provisions of the Wyoming Administrative Procedure Act, the Environmental Quality Council scheduled a hearing on the matter for August 25, 1993. The Environmental Quality Council ruled on several motions at that hearing and then set a contested case hearing on the permit application for February 22, 1994.

Contemporaneously with the July 1993 Department of Environmental Quality and Environmental Quality Council actions on the permit application, we reversed the Environmental Quality Council's "rare or uncommon" classification of Bessemer Mountain and remanded the case, finding that the Environmental Quality Council had not adopted appropriate standards in accordance with the Wyoming Administrative Procedure Act procedures on rulemaking. *See Rissler & McMurry*, 856 P.2d 450. As a result of this ruling, the Environmental Quality Council promulgated new rules in December of 1993 to define the "rare or uncommon" criteria.

On January 31, 1994, the Environmental Quality Council continued the February 22, 1994, hearing on Rissler's application for a small mine permit until April of 1994. On February 10, 1994, Rissler filed its verified notice of claim with the State, and the State denied it on February 16, 1994. A hearing on a new petition to designate Bessemer Mountain as being "rare or uncommon" was held on February 16, 1994. On February 17, 1994, the Environmental Quality Council decided to delay making any decision until after the Legislature had adjourned its session. On February 23, 1994, approximately a month before the hearing was to be held on its application, Rissler withdrew its application for a small mine permit. On the same day, Rissler filed its verified complaint in the district court, alleging, among other things, that the State temporarily and permanently deprived Rissler of the benefits of owning its lease without providing just compensation and deprived it of its procedural and substantive due process rights.

The State moved to dismiss under W.R.C.P. 12(b)(6). After hearing arguments on the matter, the district court granted the State's motion on the grounds that Rissler had not exhausted its administrative remedies. It is from that order that Rissler makes this appeal.

## STANDARD OF REVIEW

■ We have often stated the standard we apply when we are reviewing a W.R.C.P. 12(b)(6) dismissal:

> When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief.

*Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992) (citation omitted), *quoted in Davis v. State*, 910 P.2d 555, 560 (Wyo.1996). Although dismissal is a drastic remedy which should be granted sparingly, a motion to dismiss " 'is the proper method for testing the legal sufficiency of the allegations and

will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief.' " *Feltner v. Casey Family Program*, 902 P.2d 206, 208 (Wyo.1995) (quoting *Mummery v. Polk*, 770 P.2d 241, 243 (Wyo.1989)).

## DISCUSSION

■ Rissler contends that the State's conduct resulted in a temporary and permanent taking of its limestone mining lease and that it did not exhaust its administrative remedies because it would have been futile to continue trying to get a hearing on its permit application. The district court's ruling focused upon the exhaustion-of-remedies issue. We, therefore, will limit the scope of our decision to that issue.

■ The decision to decline jurisdiction because a party has failed to exhaust its administrative remedies is vested within the sound discretion of the district court. *Glover v. State*, 860 P.2d 1169, 1171 (Wyo.1993).

> "The exhaustion doctrine applies where an agency alone has been granted or found to possess exclusive jurisdiction over the case. The purpose of the doctrine then is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first instance."

860 P.2d at 1171–72 (quoting *People v. Fremont Energy Corporation*, 651 P.2d 802, 811 (Wyo.1982)). The reasons for applying the exhaustion doctrine have been well noted:

> "A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the

courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals."

860 P.2d at 1172 (quoting *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)).

When an agency denies an application or withholds or delays action on a permit application, statutory means exist under which the affected party may petition a court for review of the agency's actions. WYO. STAT. § 16–3–114 (1990) provides in pertinent part:

(a) ... [A]ny person aggrieved or adversely affected in fact by ... agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken, or in which any real property affected by the administrative action or inaction is located, or if no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in the proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

. . . .

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; ...

In addition, the Legislature has established a mechanism for determining whether an agency's denial of all or a part of a mining permit, on the basis of a "rare or uncommon" designation, rises to the level of being a compensable taking. WYO. STAT. § 35–11–1001(b)

(1994) provides a remedy for those parties who believe that their property has been taken as a result of a permit application being denied. It states:

(b) Any person having a legal interest in the mineral rights or any person or corporation having a producing mine or having made substantial capital expenditures and commitments to mine mineral rights with respect to which the state has prohibited mining operations because the mining operations or proposed mining operations would irreparably harm, destroy or materially impair an area that has been designated to be of a unique and irreplaceable historical, archeological, scenic or natural value, may petition the district court for the district in which the mineral rights are located to determine whether the prohibition so restricts the use of the property as to constitute an unconstitutional taking without compensation. Upon a determination that a taking has occurred the value of the investment in the property or interests condemned shall be ascertained and damages shall be assessed as in other condemnation proceedings.

Section 35–11–1001(b).

These statutes require a final agency decision to be rendered before an appeal may be initiated or an action for an unconstitutional taking may be pursued. Rissler did not proceed pursuant to the above provisions. Rissler's application for a small mine permit was never denied. Instead, Rissler withdrew its application approximately a month before the hearing was to occur and filed its complaint on the same day. By going directly to court, Rissler circumvented the statutes designed to provide relief. *See Cheyenne Airport Board v. Rogers*, 707 P.2d 717 (Wyo.1985), *dismissed*, 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986).

The trial court cited *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), in concluding that Rissler's takings claims were premature. In *Williamson County Regional Planning Commission*, the United States Supreme Court held:

As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

473 U.S. at 186, 105 S.Ct. at 3116. The Supreme Court went on to explain:

A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking. *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124–125, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.,* 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890)). If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. [*Ruckelshaus v.*] *Monsanto* [*Company* ], 467 U.S. [986,] 1013, 1018, n. 21, 104 S.Ct. [2862,] 2878, 2881, n. 21[, 81 L.Ed.2d 815 (1984) ].

473 U.S. at 194–95, 105 S.Ct. at 3120–21 (footnote and some citations omitted).

The Legislature has charged the Environmental Quality Council with the responsibility for approving or denying applications for mining permits. Wyo. Stat. § 35–11–112(c)(ii) (1994). Until its determination has been rendered, the courts do not have jurisdiction under § 35–11–1001(b) to make a decision on a compensatory taking action or entertain an appeal from the denial of an application for a permit under § 16–3–114 and W.R.A.P. 12.

■ Rissler claims that pursuing the permit process would have been futile because the "rare or uncommon" designation [1] as well as the continuances of the contested case hearing made it pointless for Rissler to continue. The United States Supreme Court has held: "Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986).

We agree with the Washington Supreme Court's holding:

Once exhaustion is raised as a defense, the landowner seeking to establish "futility" as an exception to the exhaustion requirement must persuade the court that futility excuses exhaustion. This is a substantial burden because of the strong public policies favoring the exhaustion doctrine.

*Presbytery of Seattle v. King County,* 114 Wash.2d 320, 787 P.2d 907, 916–17 (en banc), *cert. denied,* 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990) (footnote omitted). The Washington Supreme Court concluded that the landowner's claim was not ripe for adjudication because the landowner had not sought development permits and that, therefore, it was not possible to know what deprivation of beneficial use might result from a wetlands ordinance. 787 P.2d at 917.

The only evidence which suggests that it would have been pointless for Rissler to continue with the permit process is Rissler's opinion that it would have been futile. The fact that an area receives a "rare or uncommon" designation does not necessarily mean that a permit application will be automatically denied. Wyo. Stat. § 35–11–406(m)(iv) (Supp.1995) requires that a permit be denied only if the "proposed mining operation would irreparably harm, destroy, or materially im-

---

1. Rissler argues for the first time on appeal that creating a "paleontological" category within the definitional rule of "rare or uncommon" made the rule and regulation facially invalid. We will not consider issues which are raised for the first time on appeal. *Hiltz v. Robert W. Horn, P.C.,* 910 P.2d 566, 572 (Wyo.1996).

pair any area that has been designated ... a rare or uncommon area." Since Rissler withdrew its permit application, the Environmental Quality Council was never given the opportunity to decide whether to approve the application.

Rissler cites various cases in an attempt to support its position that it was excused from exhausting its administrative remedies under the futility exception. Rissler relies on *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). That case, however, does not help Rissler as it stands for the proposition that, when a landowner has been denied all use of his property, an ordinance cannot escape review on takings grounds simply because the ordinance is later repealed or amended. 482 U.S. at 319–21, 107 S.Ct. at 2388–89.

Rissler also relies on *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), in asserting this position. *Lucas* is likewise not helpful to Rissler. In *Lucas,* the United States Supreme Court refused to apply the exhaustion-of-remedies rule only because the South Carolina Supreme Court had disposed of the case on its merits rather than on ripeness grounds. The agency in question admitted that a permit to build would not and could not have been issued. 505 U.S. at 1012 n. 3, 112 S.Ct. at 2891 n. 3. Otherwise, the exhaustion-of-remedies rule would have been applied. 505 U.S. at 1011–12, 112 S.Ct. at 2890–91.

In this case, by contrast, the agency never stated that a permit would not or could not be issued. Furthermore, Rissler was not unconditionally and permanently deprived of all its value in the mining lease. The withdrawal of the permit application prior to the agency's final decision made it impossible for such a final, permanent deprivation to occur.

█ We disagree with Rissler's argument that the Environmental Quality Council does not have statutory authority to continue a hearing. We have recognized that continuances may be requested in the administrative hearing context. *See State ex rel. Wyoming Workers' Compensation Division v. Rivera,* 796 P.2d 447, 452 (Wyo.1990); *see also Grams v. Environmental Quality Council,* 730 P.2d 784, 788 (Wyo.1986) (reviewing a refusal to grant a continuance in a surface-coal-mine-permit case under an abuse-of-discretion standard rather than under a lack-of-statutory-authority standard).

While we understand Rissler's frustration with the bureaucratic hoops which it was required to jump through, we cannot sanction its total abandonment of the administrative process. The Wyoming Administrative Procedure Act provides appropriate remedies for those parties who have been aggrieved by an agency's actions, and a party must exhaust those remedies before it pursues alternative forms of relief.

## CONCLUSION

Rissler failed to sustain its burden of establishing that it was excused by reason of futility from exhausting its administrative remedies, and, thus, the district court correctly dismissed Rissler's temporary and permanent takings claims as being premature.

Affirmed.