# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 12

### OCTOBER TERM, A.D. 2016

### February 3, 2017

BUSH LAND DEVELOPMENT
COMPANY, A Wyoming Corporation,
and VICTORIA BUSH, as the president
and director of Bush Land Development
Company, and in her individual capacity,

Appellants
(Plaintiffs),

v.

CROOK COUNTY WEED & PEST
CONTROL DISTRICT, CROOK
COUNTY WEED & PEST CONTROL
DISTRICT BOARD OF DIRECTORS,
RANDALL OTWELL, in his official
capacity, LEE HAUBER, in his official
capacity, LEROY CURREN, in his official
capacity, DAVID MOLINE, in his official
capacity, FRANK HAWKEN, in his
official capacity, CROOK COUNTY
WEED & PEST CONTROL DISTRICT
SUPERVISOR, BOB GILBERT, in his
official and individual capacities, CHASE
WADLEY, in his official and individual
capacities, GAVIN HOLLAND, in his
official and individual capacities, and
KIRK BRODERSON, in his official and
individual capacities,

Appellees
(Defendants).

S-16-0149

*Appeal from the District Court of Crook County*
The Honorable John R. Perry, Judge

*Representing Appellants:*
Patrick J. Crank of Crank Legal Group, P.C., Cheyenne, Wyoming; Marci Crank Bramlet of Chapman Valdez & Lancing, Casper, Wyoming. Argument by Mr. Crank.

*Representing Appellees:*
Rick L. Koehmstedt of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ**, Justice.

[¶1]    Appellants Bush Land Development Company and Victoria Bush (hereinafter referred to collectively as "Bush") appeal from the district court's dismissal of their statutory claim for inverse condemnation against Appellees Crook County Weed and Pest Control District, its board of directors, and four of its employees (hereinafter referred to collectively as "the District"). Bush claimed that, under Wyo. Stat. Ann. § 1-26-516 (LexisNexis 2015), it was entitled to just compensation for the loss of many trees on its property as a result of the District's improper application of herbicides.

[¶2]    We affirm the district court's dismissal of the action, although on different grounds. There is a specific administrative process set forth in Wyo. Stat. Ann. § 11-5-110 (LexisNexis 2015) for resolving claims that a weed and pest district has damaged a landowner's property. Given there is no indication in the record that Bush exhausted its administrative remedies, the inverse condemnation action was not properly before the district court.

## ISSUE

[¶3]    The dispositive issue in this case is:

> Did Bush fail to exhaust its administrative remedies before claiming inverse condemnation?

## FACTS

[¶4]    In June 2013, the District offered to apply, at no charge, herbicides to control leafy spurge found on Bush's property which bordered the Belle Fourche River near Hulett, Wyoming. Bush agreed, and District employees sprayed the property on June 18 through 21, 2013. Soon after the District completed the spraying, Bush noticed that many trees in the area of the spraying were dying. The Wyoming Department of Agriculture investigated the matter and reported:

> [The District] did not purposefully mis-apply the pesticides Tordon & Rifle along the Belle Fourche river bottom zones near Hulett. However applications were not in compliance with herbicide labels. Applications were made over shallow water tables, on steep banks that could pose run off risks into the river, and certainly in between days of adverse wet weather conditions. Tordon labeling specifically warns not to apply directly to water, to areas where surface water is present, or to intertidal areas below the mean high water marks. [sic] To also NOT make applications when

1

circumstances favor movement from treatment sites. Tordon also should not be applied within the root zone of desirable trees. . . . Soil and [v]egetative sample analysis also confirm Tordon/Rifle pesticide residues. [sic] Corroborating that pesticides were indeed a direct cause for riparian zone trees and plants dropping leaves, changing colors, and showing signs of low vigor.

[¶5]　Bush submitted a notice of governmental claim to the District on June 8, 2015, stating that the "negligent application" of herbicides killed numerous trees on its property. There is no indication in the record that the District ever took action on the governmental claim. On June 18, 2015, Bush filed this inverse condemnation action in district court. The complaint stated the District "damaged land and real property owned by [Bush] through [its] actions of spraying herbicide in violation of label directions and outside of appropriate/approved areas."

[¶6]　The District's board of directors and employees filed separate motions to dismiss, asserting that the action was not proper under the inverse condemnation statute. The District joined in the motions to dismiss. The district court held a hearing on the matter and subsequently dismissed Bush's claim. Bush filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶7]　When reviewing a district court's decision granting a motion to dismiss, we perform a *de novo* review of the same materials considered by the district court. *Sorensen v. State Farm Auto. Ins. Co.,* 2010 WY 101, ¶ 7, 234 P.3d 1233, 1235-36 (Wyo. 2010). We consider the complaint and any incorporated attachments in our review. *See Irene v. Seneca Ins. Co.,* 2014 WY 145, 337 P.3d 483 (Wyo. 2014); *Ridgerunner, LLC v. Meisinger,* 2013 WY 31, 297 P.3d 110 (Wyo. 2013).

>　"When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief."
>
> *Herrig v. Herrig,* 844 P.2d 487, 490 (Wyo.1992) (citation omitted), *quoted in Davis v. State,* 910 P.2d 555, 560 (Wyo.1996). Although dismissal is a drastic remedy which should be granted sparingly, ***a motion to dismiss " 'is the proper method for testing the legal sufficiency of the***

2

> *allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief.' "* *Feltner v. Casey Family Program,* 902 P.2d 206, 208 (Wyo.1995) (*quoting Mummery v. Polk,* 770 P.2d 241, 243 (Wyo.1989)).
>
> *Rissler & McMurry Co. v. State,* 917 P.2d 1157, 1160 (Wyo.1996), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997) (emphasis added).

*WW Enterprises, Inc. v. City of Cheyenne,* 956 P.2d 353, 355 (Wyo. 1998).

## DISCUSSION

### 1. Constitutional Taking/Eminent Domain Act

[¶8]    The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use without just compensation.  Likewise, Wyoming Constitution art. 1, § 33, states:  "Private property shall not be taken or damaged for public or private use without just compensation."  Importantly, under these provisions, the government is not prohibited from taking private property; it is only prohibited from taking property without just compensation. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194-95, 105 S. Ct. 3108, 3120-21, 87 L. Ed. 2d 126 (1985); *Rissler,* 917 P.2d at 1162.

[¶9]    Eminent domain is the "'"power of the sovereign to take private property for the public use without the owner's consent.'"" 4 Tiffany Real Prop. § 1252 (3d ed. 2016). The government's power of eminent domain is exercised through condemnation proceedings. *See id.*  However, when the government takes private property without using formal condemnation proceedings, a landowner can bring an inverse condemnation action to recover just compensation. *United States v. Clarke*, 445 U.S. 253, 257, 100 S. Ct. 1127, 1130, 63 L. Ed. 2d 373 (1980).  The United States Supreme Court explained in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* 482 U.S. 304, 316, 107 S. Ct. 2378, 2386, 96 L. Ed. 2d 250 (1987):  "While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings."

[¶10] The Eminent Domain Act, Wyo. Stat. Ann. §§ 1-26-501 through 1-26-817 (LexisNexis 2015), governs condemnation proceedings in Wyoming.  The bulk of the

3

Eminent Domain Act sets out the requirements and procedures for governmental entities[1] to exercise their powers of eminent domain consistent with the United States and Wyoming constitutions. However, in this case the District did not bring a condemnation action, so Bush brought its claim under the section of the act providing for inverse condemnation, Wyo. Stat. Ann. § 1-26-516:

> When a person possessing the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land, due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.

[¶11] The inverse condemnation statute provides landowners with a specific cause of action when the government takes or damages an interest in private property without using formal condemnation procedures. *See, e.g.*, *Cheyenne Airport Bd. v. Rogers,* 707 P.2d 717, 729 (Wyo. 1985) (stating that the takings clauses "apply to cases where governmental action effectively takes or destroys a private interest in property. These situations are described as inverse condemnation."); *Smith v. Bd. of County Comm'rs of Park County,* 2013 WY 3, ¶ 23, 291 P.3d 947, 954 (Wyo. 2013) (recognizing that § 1-26-516 creates a cause of action to recover damages for an unlawful taking). *Conner v. Bd. of County Comm'rs, Natrona County,* 2002 WY 148, ¶ 30, n.10, 54 P.3d 1274, 1285, n.10 (Wyo. 2002), explained how direct and inverse condemnation work together in the context of the Eminent Domain Act:

> Inverse condemnation is distinct from eminent domain. Eminent domain refers to the legal process by which the government asserts its authority to condemn property. Inverse condemnation is a cause of action a landowner may pursue to recover just compensation for a taking of his or her

---

[1] In certain circumstances, private parties in Wyoming have the right of eminent domain. Wyo. Const. art. 1, § 32 states: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation." Some examples of private condemnation actions found in the Eminent Domain Act include actions by railroads (§ 1-26-810) and utility, petroleum or pipeline companies (§ 1-26-814). In addition, private ways of necessity may be condemned for various uses under § 1-26-815. Another example of private condemnation can be found in the private road procedure at Wyo. Stat. Ann. § 24-9-101 (LexisNexis 2015). This decision does not address private condemnations.

property when condemnation proceedings have not been instituted.

(citations omitted).

### 2. Administrative Remedy

[¶12] Recognizing that the government may take property as long as it provides just compensation, this Court and the United States Supreme Court have stated that a party may not bring a takings action until it has availed itself of procedures provided by the State for obtaining compensation for its property. In *Rissler,* 917 P.2d at 1162, we stated:

> "[T]he taking claim is not yet ripe [because] respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking. *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124-125, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.,* 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890)). If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. [*Ruckelshaus v.*] *Monsanto* [*Company* ], 467 U.S. [986,] 1013, 1018, n. 21, 104 S.Ct. [2862,] 2878, 2881, n. 21[, 81 L.Ed.2d 815 (1984) ]."

*Id., quoting Williamson County,* 473 U.S. at 194-95, 105 S. Ct. at 3120-21 (footnote and some citations omitted).

[¶13] *Rissler* did not discuss the Wyoming Eminent Domain Act even though it went into effect thirteen years before Rissler filed its complaint claiming that the State had temporarily and permanently deprived it of a mineral lease without just compensation. Although § 1-26-516 clearly provided an action for inverse condemnation, we required Rissler to exhaust the available administrative procedures before it could claim it had suffered a taking. *Rissler,* 917 P.2d at 1161. *See also* 29A C.J.S. *Eminent Domain* § 578 (2016) (stating "[g]enerally, a property owner claiming that his or her property has been

taken or damaged without just compensation under the eminent domain power must exhaust his or her administrative remedies before resorting to the courts.").

[¶14]  Turning to the circumstances of the present case, § 11-5-110 establishes a process to compensate landowners damaged by weed and pest district activities:

> When the district board determines by resolution that the landowner's property has been damaged as a result of carrying out its requirements, the district board shall by resolution appoint three (3) disinterested freeholders within the district to appraise the amount of damage, upon which the district shall forthwith compensate the landowner. The landowner may file a claim for damages and is entitled to a hearing relative to the amount of damages pursuant to the Wyoming Administrative Procedure Act.

This statute provides a specific administrative remedy for a landowner when his property is "damaged as a result" of a weed and pest district "carrying out its requirements."

[¶15]  Wyo. Stat. Ann. § 11-5-105(a)(i) requires weed and pest district boards to "[i]mplement and pursue an effective program for the control of designated weeds and pests," and other provisions of the Weed and Pest Control Act provide the procedures for undertaking that charge. *See, e.g.*, § 11-5-109.  The Department of Agriculture report attached to Bush's complaint stated:  "In the summer of 2013, the Crook County Weed & Pest . . . Agency allocated resources to control Leafy Spurge invasions in the county.  The Belle Fourche River zone, running through and around the town of Hulett[,] was identified as a control area.  A three member [District] crew was dispatched to Hulett to work with area landowners on preferred pesticide application zones."  Bush was one of those landowners.

[¶16]  The District confirms in its brief that it was "carrying out its requirements" when it sprayed Bush's property:

> It is important to reiterate that the District spray crew was conducting noxious weed (leafy spurge) spraying operations in accordance with police power granted to the District by the State of Wyoming.  See, e.g., Wyo. Stat. § 11-5-109.  Wyoming law specifically authorizes and directs the District to investigate and remediate infestation of weeds or pests which are liable to "spread and contribute to the injury or detriment of others."  As such, while the District spray crew was present on the property and spraying with consent of Appellants, the actions of the District spray crew were in

6

furtherance of a statutory mandate to control noxious weeds
[sic] is a valid exercise of police power under Wyoming law.

[¶17]  The record does not indicate that Bush specifically pursued the remedy provided by § 11-5-110.  Bush's governmental claim did not mention the statute, and Bush stated repeatedly in its brief and at oral argument that inverse condemnation was the only remedy available to it.  There is a very compelling reason to require compliance with the statutory procedure—if the District compensates Bush in accordance with the statute, there is no taking or damage to private property without just compensation.

[¶18]  A "party may be excused from having to exhaust his administrative remedies if (1) it would be futile for him to follow the administrative procedures, (2) the agency has adopted a policy or pursued a practice of general applicability which is contrary to the law, or (3) it is improbable that appropriate relief could be obtained through the administrative appeals process." *Koopman v. Fremont County Sch. Dist. No. 1,* 911 P.2d 1049, 1054 (Wyo. 1996).  *See also Sky Harbor Air Serv., Inc. v. Cheyenne Regional Airport Bd.,* 2016 WY 17, ¶ 26, 368 P.3d 264, 270 (Wyo. 2016).  There is nothing in the record before us to suggest that following the procedure available under § 11-5-110 would have been futile, the District has adopted a policy or pursued a practice of general applicability which is contrary to the law, or it is improbable that Bush could obtain appropriate relief through the administrative process.

[¶19]  We, therefore, conclude that Bush must pursue the remedy available under § 11-5-110 before it can claim inverse condemnation.  The district court properly dismissed Bush's § 1-26-516 action.[2]

[¶20]  Affirmed.

---

[2] Once administrative procedures are exhausted, the state inverse condemnation procedure must be pursued before a takings claim under the United States Constitution is cognizable in federal court. *See Miller v. Campbell County,* 945 F.2d 348, 352 (10th Cir. 1991) (plaintiffs were required to pursue an inverse condemnation action for damages resulting from Campbell County's order requiring them to evacuate from their homes before their Fifth Amendment takings claim was ripe); *Schanzenbach v. Town of La Barge,* 706 F.3d 1277, 1281-82 (10th Cir. 2013) (plaintiff's claim that the town violated the Fifth Amendment takings clause when it revoked his building permit was not ripe because he had not pursued an inverse condemnation action under state law).