ETHEL BIDDICK,

*Plaintiff*

and OLIVER L. SHMIDL and ELLA SHMIDL,

*Plaintiffs and Appellants*

vs.

LARAMIE VALLEY MUNICIPAL IRRIGATION DISTRICT, a Public Corporation; JOHN K. RIE-DESEL and WAYNE LUBEN, as Commissioners of said public corporation,

*Defendants and Respondents*

(No. 2739; July 3rd, 1956; 299 Pac. (2d) 1059)

Heard before Blume, Chief Justice, Harnsberger, Justice and McAvoy, District Judge.

For the plaintiff the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Mr. Bard Ferrall.

For the plaintiffs and appellants the cause was submitted upon the brief of Davis & Costin of Laramie, Wyoming, and oral argument by Mr. Gordon W. Davis.

No appearance was made for defendants and respondents.

## OPINION

BLUME, Chief Justice.

This is an action brought by plaintiff Ethel Biddick against Laramie Valley Municipal Irrigation District, in which the plaintiff prayed that the court determine what water rights and ditches are owned and held by said district; the proper and lawful basis of levying assessments for current annual expenses of same district; the proper and lawful method of distributing water of the Big Laramie River diverted by means of the so-called Oasis Ditch, and to settle the controversies between the parties. Plaintiff also prayed that the court define the term "irrigable land." The defendant, Laramie Valley Municipal Irrigation District, appeared and answered, but it has not appealed in the case, so that it is not necessary to set out the allegations in the answer. Subsequently Oliver L. Shmidl, one of the directors in said district, and his wife — the two of them owning lands in the district — asked to be made parties in the case, which was done. They have appealed from the findings of fact and the conclusions of law of the trial court. They will hereafter be called the appellants in the case. The only allegations in their petition of intervention are that they own some lands in the district, that their rights are common to those of plaintiff and of defendant, and that their lands are subject to assessment in the district. No evidence in their behalf was introduced to show specifically how their interests are adversely affected by the finding of fact and the conclusions of law of the trial court, but we shall consider their main contentions.

The defendant irrigation district seems to be one of those unfortunate districts in which there is an ex-

tremely limited water supply. In the western part of
the district, west of the Big Laramie River, is located
a reservoir, by which, in the early days, it was doubt-
less hoped that a supplemental water supply could be
obtained amply sufficient to irrigate all the lands in
the district. But whatever may have been true in the
beginning, the hope was not realized, and the apparent
purpose of organizing the district appears to have been
entirely frustrated. By reason of drouth very little
water has for many years been available for irriga-
tion. The district is divided by the Big Laramie River.
The west part, in which the reservoir is located, con-
tains 18,352.44 acres of land; the east part, that part
located east of the river, contains 10,115.67 acres. The
west part is not irrigable from the waters of the
river. By reason of the greater acreage in the west
part and the method of voting heretofore followed,
which gave the owner of each acre of land one vote
whether the land had irrigable water or not, the own-
ers of the west part substantially controlled the whole
of the district, including the board of directors of the
district, and the amount of the assessments to be im-
posed on the various lands in the district. The injustice
of that is quite apparent in view of the facts herein.
As a matter of practice, the lands west of the river
have been assessed with small amounts annually, if any
at all, depending on whether any work was done in
that part. That in itself would seem to be unobjection-
able, provided that an adjustment is made in other re-
spects to fit the situation. The greater part of the an-
nual expenses of the district have been met by assess-
ments against the lands east of the river, and the com-
plaint in that connection is the inequality of assess-
ments as between the land owners in the district. As
a matter of practice, the water allocated to the various

lands in the east part has been according to the original appropriation to the various lands. The only water rights in the east part of the district are those originally appropriated by various individuals or partners through various ditches, with head gates in the Big Laramie River, mentioned in the findings of the court. These ditches, it appears, have all been abandoned, and all the waters in the district are now distributed through the Oasis Ditch which has its head gate in the river mentioned.

To understand the contentions of the appellants herein, it will be necessary to set out the findings of fact and the conclusions of law of the trial court which set out further and additional facts.

"As to Conclusions of Fact, First Cause of Action.

"1. Laramie Valley Municipal Irrigation District is a public corporation, created under the laws of Wyoming in 1908.

"2. All lands within the District lie within Albany County.

"3. The lands within the District, according to the budget reports of the Commissioners, consist of approximately 28,468.11 acres, of which 18,352.44 lie Westerly of the Big Laramie River and 10,115.67 acres lie Easterly of said river.

"4. No lands within the District lying Westerly of the Big Laramie River are irrigated by a right to the direct flow of said River held by the District.

"5. The District has the authority to maintain the irrigation system known as the Oasis Ditch which is owned by the District and convey the water rights through said ditch and distribute it to the owners of the land to which the same has been adjudicated by the Board of Control and the Decree of the District

Court, First Judicial District of Wyoming, dated December 27, 1912, as follows:

| Priority, Name | Date of Appropriation and Amount in cubic feet per second of time | | Acres |
|---|---|---|---|
| 3 Abbot Water Ditch — October 2, 1877 | | 17.79 | 1245 |
| 10 Abbot & Coleman, April 30, 1881 | | 4.50 | 315 |
| 14 J. B. Water Ditch, April 1, 1883 | | 1.71 | 120 |
| 18 Bilderbach Ditch, May 31, 1883 | | 16.00 | 1117 |
| 34 Oasis Ditch, September 22, 1886 | | 18.64 | 1305 |
| 47 Oasis Water Ditch, June 15, 1890 | | 64.57 | 4520 |

"6 The District may own other direct flow rights but the six above described are the principal direct flow rights, are the principal subjects of the controversies between the parties, and are all diverted by the District by the Oasis Ditch.

"7. A system and reservoir called the James Lake Reservoir System was constructed prior to 1912 for the purpose of storing the flow of the Little Laramie River, and Seven Mile Creek and perhaps the flow of other creeks under Permits now held by said District; the plan and purpose at the time of the creation of said District was that said stored water would be used for the irrigation of lands within said District lying Westerly of the Big Laramie River; and that for many years there has not been sufficient water available to irrigate in excess of 300 acres; and that all water available has been used for a beneficial use, within said District and Westerly of said River have been irrigated by water obtained by said system; the water to irrigate a larger area Westerly of the River is not, and has not been available; and no lands within the District and Westerly of the River, from a practical standpoint, can be irrigated by the rights the District holds to divert the water of the Big Laramie River.

"8. Approximately 9,000 acres of the lands within said District lying Easterly of said River, all lying under the Oasis Ditch, can be irrigated by said direct flow rights provided laterals are constructed and lands

levelled; by reason of other appropriations senior to most of the direct flow rights of said District, which senior rights include No. 1 for 46.79 cubic feet per second, No. 6 for 71.43 cubic feet per second and No. 17 for 633 cubic feet per second, the water available for the District under said direct flow rights, following the run off period ending about June 20th, of each year, has been and will be, during most years, less than 17.79 cubic feet per second.

"9. Except for a negligible acreage, hay is the crop raised by irrigation upon the lands within said District and unless rainfall is quite heavy and opportune, irrigation water amounting to not less than 1 cubic foot per second for each 70 acres during the entire irrigation season from a date in May until about August 1, is necessary to make a proper hay crop; unless a hay crop can be raised the cost of applying water to lands irrigated for only a short time may exceed the benefits derived from such light irrigation.

"10. The point of diversion of said five direct flow rights is the headgate of the Oasis Ditch all rights having been placed in said ditch more than twenty-five years prior to this Judgment by the application of said District; each of said five direct flow rights above described has theretofore been diverted and applied to beneficial use as though appurtenant to the land to which such was first applied, said land being as shown in what is commonly called the Decree of 1912 adjudicating the rights to use the water of the Big Laramie River, said land also being described in plaintiff's Exhibit "A" attached to the petition; each of said five rights is what is commonly called a Territorial Right; the State Engineer of Wyoming has informed defendants the water diverted under each right shall be used only upon the land to which such is appurtenant as provided in said Decree of 1912 as aforesaid and upon no other land.

"11. Annual assessments for current expenses levied by or for said District for 1950 through 1954 were $1.00 per acre upon 6685 acres lying under said Oasis

Ditch and ten cents per acre each three or four years on lands Westerly of the river (an assessment is not levied each year upon said lands Westerly of the river); for many years no assessment whatsoever has been levied upon any lands Easterly of said river except said lands under said Oasis Ditch; and the officials of said District have shown by their budgets for recent years they consider only 6685 acres within said district Easterly of said river and under said Oasis Ditch, in condition to receive water at this time from said direct flow rights.

"12. By reason of each of said direct flow rights being treated and considered as appurtenant only to certain land and not susceptible to use upon other lands under said Oasis Ditch only three parties receive water during the entire irrigation season as a general rule, said three parties being the present owners of lands originally under the Abbot Water Ditch right, and the total acreage for which said three parties receive water does not exceed 1245 acres, the same being the lands for which the 17.79 cubic feet per second taken under right number 3, Abbot Water Ditch, were appropriated and applied to beneficial use as stated in said Decree of 1912. Plaintiff contends said direct flow rights are held and owned by said District, are not appurtenant to only certain land, but may be used upon any lands within said District that can be irrigated thereby by practical methods which do not cause waste and that as a matter of fact and from the experience of the past twenty and more years not more than 23.86 cubic feet per second will be available from said rights for lands under said Oasis Ditch, or any lands within said District, during the irrigation season following the run off. Defendants agree no greater amount will be available than as aforesaid but contend such can be used only upon certain acreage and no other acreage as set forth in number 10 above, regardless of assessments, needs or demands, and no party to this action has attempted to contend all water available for the District should not be used if possible.

"13. The major part of said 6685 acres under said Oasis Ditch does not receive water and water is not available for said major part except during flood periods; only approximately 300 acres Westerly of said river receive water and there is no prospect that any part thereof except 300 acres will receive water in the foreseeable future.

"14. Section 71-826 provides, inter alia, as follows: 'All such assessments for current expense shall be based upon irrigable acreage and shall be uniform as to irrigable lands receiving the maximum apportionment of water from said District, and as to irrigable lands receiving less than such maximum apportionment such assessment shall bear the same proportion as the amount of water apportioned to such lands bears to the maximum apportionment of water to other lands in such district.' This portion of the statute should be interpreted literally and such interpretations should be put into practical operation by designating the user of the maximum amount of water under the previous year as a base and charging the user of any lesser amount in proportion thereto.

"Section 71-844 provides, as to voting, inter alia, 'Every person or corporation owning, or entitled by virtue of public land filing to the possession of land situated within and being a part of any district in which an election is being held, and upon which land no assessment for operation, maintenance or repairs is delinquent for more than four (4) years, shall be entitled to cast, for each commissioner to be elected, one vote for each irrigable acre of such land assessed upon the last annual assessment roll of said district.' This section should be interpreted to mean that the owner of each acre of land assessed the maximum amount for the prior year should be allowed one vote, and the owner of each acre of land assessed a lesser amount should have a fraction of a vote based upon the relation his assessment for the prior year bears to the maximum assessment. The rule in the statute as to the effect of delinquency on voting rights is clear and should be effective.

"The following provision from the 1953 amendment of 71-826 should be effective: 'Provided, however, that the commissioners of any district may, in their discretion, provide for a minimum annual assessment for current expense.'

"15. That the direct flow rights set forth in Paragraph 5 are appurtenant to the lands for which they were adjudicated and cannot be used upon any other land under the Oasis Ditch; that all land Westerly of the Laramie River under the James Lake System are susceptible to irrigation from their source, but cannot be irrigated from or by the Oasis Canal.

"16. No evidence has been presented showing lands lying under the Boughton Ditch have been irrigated by water furnished by said District.

"As to Conclusions of Fact, Second Cause of Action.

"17. The irrigable lands upon which voting shall be based, from the evidence before the court as of the time of the hearing, are 300 acres Westerly of the Big Laramie River and 6685 acres Easterly of said river.

"Conclusions of Law and Judgment, Both Actions

"IT IS HEREBY ORDERED, CONCLUDED, ADJUDGED, AND DECREED:

"A. The water rights described in Paragraph 5 the Conclusions of Fact are found to be appurtenant to the lands described in the respective Certificates of Appropriation for each of said water rights.

"B. The use of water is restricted to the lands to which the said water is appurtenant under § 71-401, WCS, 1945.

"C. Assessments for current expense shall be determined in accordance with the use of water on irrigable lands as stated in Paragraph 14 of the Conclusions of Fact;

"D. Voting rights shall be directly proportional to the assessments on land, in accordance with the views set forth in Paragraph 14 of the Conclusions of Fact.

"IT IS ORDERED, ADJUDGED AND DECREED that each of the parties hereto pay his own costs.

"Each of the parties hereto excepts to the finding and judgment of the Court, and each is granted an exception.

"DONE IN OPEN COURT this 3rd day of October, A.D. 1955."

Appellants complain that the trial court did not determine the meaning of "irrigable land." It did not do so in so many words, but in substance it did when it made its findings in connection with assessments to be made in connection with voting rights. Abstractly speaking "irrigable land" is land which is suitable for irrigation, but concretely speaking it implies that there must be water available by which the land may be irrigated. Thi sis not in conflict with Cabell v. Federal Land Bank of Spokane, 173 Or. 11, 144 P.2d 297, 302, approving State v. McClain, 136 Or. 53, 57, 298 P. 211, 213, which quoted from Babcock v. Canadian Pac. R. Co., 9 Atla L. 270, 278, 27 Dom. L.R. 432, 436, 33 West L. R. 941, to this effect:

" ' "Irrigable lands" means lands which by reason of their level, *relative to the irrigation works,* can have water carried over them therefrom by gravity and which, having regard to the character of the soil and of the climate, will be rendered more productive by means of irrigation properly applied in the growing of crops adapted to the locality.' "    (Italics supplied)
The whole definition, particularly the italicized portion clearly indicates that the court assumed that the term "irrigable lands" implies that there must be water available for irrigation. We have perhaps a million acres of non-irrigated land in this state which may be said to be suitable for irrigation, but to say that these are irrigable lands without water available for irrigation, would be rather anomalous.

With the foregoing in view, we may proceed to the next exceptions of counsel for the appellants, namely, findings of fact 14 and conclusion of law C and D.

The first part relates to the manner of making the annual assessments. That merely follows the statute, and we can find no error in that connection.

The second part relates to the votes to which the respective parties are entitled in the elections held in the district, and counsel object that the introduction of fractional votes is not in accordance with the statute which provides that the parties are entitled to cast "one vote for each irrigable acre of such land assessed." While the finding and the conclusions of the court may not be within the literal reading of the statute, we think it is within the spirit thereof. The limited supply of water in the district makes it necessary to interpret the statute according to the concrete facts. The findings and conclusions of the trial court are about as just as is possible under the circumstances, and we find no error in that connection.

Counsel for appellant complain of conclusions of law A and B of the trial court to the effect that the water heretofore used by the respective owners of land are appurtenant to the land, and are not severable therefrom, and say that these waters being owned by the district may be used on any land within the district. They claim that if the district does not own the water, then it has no right to make assessments. We think that contention goes too far. The assessments, while made in proportion to the water furnished the owners of the land — which clearly is just — are not made, directly at least, on the water right, but to maintain the works which carry the water to the land. While accordingly the district and the water rights therein

are, as it were, linked together, that does not necessarily determine as to who has the right to the beneficial use of the waters. In the first place, even if we assume the water belongs to the district, still the man whose lands are within the district wants to know that he has a certain dependable amount of water which he can use upon the land each year. He would be in a precarious position if the district were authorized to give him a certain portion of water one year, and the next year give him no water at all, or only a fraction of what he received previously. Section 71-814 Wyoming Compiled Statutes, 1945, contemplates that a definite portion of water shall be set off to him, for it provides: "8. They (the commissioners) shall set forth in their report the amount of water by them apportioned to each separate tract or lot of land in said district, to be assessed."

In the case at bar the water used upon the various tracts of land has been that appropriated for them in the first place. So, assuming the district owns the waters, it may well be said that it has been apportioned by the district in accordance with the original appropriation. In the second place, we find nothing in the record to show that the respective water originally appropriated for various lands was ever transferred to be used on other lands. The record contains a conveyance of the lands so originally appropriated from the James Lake Irrigation Company to the Laramie Valley Municipal Irrigation District, but there is nothing in the record to show that it had any authority to do so. Hence in view of the limited facts shown herein, and in view of the fact that the State Board of Control or the water commissioners are not parties herein, we find no reason for disturbing the conclusions of law here considered.

We decide in this case only the direct questions here discussed. We do not decide whether or not the district owns the waters therein for certain purposes not herein discussed, for example, whether the water not used by parties in the district entitled thereto, as herein mentioned, may not or should not be used on other lands in the district rather than by parties outside the district. These matters shall not be considered as res judicata and are left open for future consideration by the trial court or this court when the proper and necessary parties are before the court.

The judgment of the trial court is affirmed.

Affirmed.

Harnsberger, J., and McAvoy, D.J., concur.