2009 WY 11

Steven M. KRENNING and Joyce C. Krenning, husband and wife, Appellants (Plaintiffs),

v.

HEART MOUNTAIN IRRIGATION DISTRICT and James Flowers, Appellees (Defendants),

and

The State of Wyoming, Appellee (Intervenor).

No. S–07–0271.

Supreme Court of Wyoming.

Jan. 29, 2009.

Representing Appellants: Larry B. Jones and William L. Simpson, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming; Michael S. Messenger, Messenger & Jurovich, PC, Thermopolis, Wyoming; Thomas W. Redmon, Redmon Law Offices, Casper, Wyoming. Argument by Mr. Jones.

Representing Appellee, Heart Mountain Irrigation District: Jay A. Gilbertz, Yonkee & Toner, LLP, Sheridan, Wyoming.

Representing Appellee, James Flowers: Jason A. Neville and Lori L. Gorseth, Williams, Porter, Day & Neville, PC, Casper, Wyoming. Argument by Mr. Neville.

Representing Appellee, State of Wyoming: Bruce A. Salzburg, Attorney General; Elizabeth C. Gagen, Chief Deputy Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General; Bridget L. Hill, Senior Assistant Attorney General. Argument by Ms. Gagen.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Steven and Joyce Krenning brought suit against the Heart Mountain Irrigation District and its employee, James Flowers, seeking recovery for personal injuries Mr. Krenning suffered in an altercation with Mr. Flowers. The district court ruled that the Irrigation District and Mr. Flowers were immune from liability pursuant to the Wyoming Governmental Claims Act (WGCA), and granted summary judgment in their favor. Mr. and Mrs. Krenning challenge that decision in this appeal. We will affirm.

## ISSUES

[¶ 2] The Krennings state the following issues, although we put them in a different order to facilitate discussion:

1. Appellee Heart Mountain Irrigation District is not a governmental entity under the provisions of the Wyoming Governmental Claims Act, W.S. § 1–39–101, *et seq.*, (LexisNexis 2007), and thus neither the Irrigation District, nor its employees, are within the scope of governmental immunity granted by the Wyoming Governmental Claims Act.

2. If Appellee Heart Mountain Irrigation District is a governmental entity for purposes of the Wyoming Governmental Claims Act (WGCA), it is also a "public utility" for which immunity has been waived under the provisions of W.S. § 1–39–108, and thus both the Irrigation District and its employees may be liable for their negligence.

3. Under the alternative allegations of Appellants' Complaint, Appellee James Flowers was asserted to be acting both within and without the scope of his employment. Questions of fact remain as to whether he was acting outside the scope of his employment so as to not be protected by any immunity that allegedly exists for the Irrigation District.

4. Granting Sovereign Immunity to an Irrigation District and its employees, such as Appellees, is contrary to and violative of the Wyoming Constitutional guarantees of Equal Protection under Article 1, §§ 2, 3, 6, 8, 34 and Article 3, § 27.

## FACTS

[¶ 3] Heart Mountain Irrigation District is an irrigation district organized pursuant to Wyo. Stat. Ann. § 41–7–201 (LexisNexis 2007). Through a series of canals, ditches, dams, and other works, the Irrigation District delivers irrigation water to landowners with water rights within the district. Mr. Flowers was an employee of the Irrigation District. Mr. Krenning owns and leases lands within the Irrigation District, and receives irrigation water from the Irrigation District.

[¶ 4] On October 4, 2004, Mr. Flowers and Mr. Krenning had a chance meeting on the road paralleling one of the Irrigation District's canals. They began arguing, and a physical confrontation followed. There is considerable dispute about the details, but the district court's decision letter provided this useful summary:

> [The Krennings] allege that Flowers had a volatile temper which had been reported to the District on numerous occasions. [The Irrigation District and Mr. Flowers] allege that [Mr. Krenning] had a history of behavior that "terrorized" neighbors and family members.
>
> Regardless, on October 4, 2004, Flowers was working for the District and talking with a ditch rider, Mr. House, when Steve Krenning approached him to discuss ditch seepage. Flowers was sitting in his truck at the time. There had been previous accusations from Flowers that Krenning was improperly using irrigation water. A confrontation between Flowers and Krenning ensued and it is undisputed that Flowers struck Krenning with a shovel at least twice. As a result, Krenning's arm was broken and he received head injuries.

[¶ 5] Mr. Flowers was arrested and charged with assault with a deadly weapon. At trial, he did not deny hitting Mr. Krenning with the shovel. However, he claimed that he had acted in self-defense, and that Mr. Krenning had been the aggressor. The jury agreed that Mr. Flowers had acted in self-defense,[1] and he was acquitted.

[¶ 6] On July 14, 2005, the Krennings presented the Irrigation District with a Verified Notice of Claim pursuant to Wyo. Stat. Ann. § 1–39–113, which requires such notice before an action may be brought against a governmental entity. The Irrigation District did not respond to the notice, and on August 10, 2005, the Krennings filed a complaint in

---

1. In criminal cases, it is often difficult or impossible to ascertain the basis on which the jury reached a decision. In Mr. Flowers' case, however, the verdict form asked the jury to check one of two choices: "Guilty (no self-defense)" or "Not Guilty (self-defense)." The jury checked the latter.

the district court against the Irrigation District and Mr. Flowers. On June 15, 2007, the Irrigation District moved for summary judgment, asserting immunity from suit pursuant to the WGCA. Mr. Flowers joined that motion, claiming that he was also subject to governmental immunity as an employee of the Irrigation District. The district court ruled in favor of the Irrigation District and Mr. Flowers, and the Krennings appeal that decision.

[¶ 7] One of the issues raised in this appeal is the constitutionality of the WGCA. Accordingly, notice was served on the Attorney General as required by Wyo. Stat. Ann. § 1–37–113 and W.R.C.P. 24(d). The State of Wyoming intervened in order to address the constitutional challenge.

## STANDARD OF REVIEW

[¶ 8] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008). *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008).

## DISCUSSION

**1. Is the Irrigation District subject to governmental immunity?**

[¶ 9] This is the first time we have been squarely presented with the question of whether the WGCA provides governmental immunity to an irrigation district. To answer the question, we must interpret the statutory language of the WGCA. "Statutory interpretation is a question of law, so our

review is *de novo.*" *Qwest Corp. v. Public Svc. Comm'n of Wyo.*, 2007 WY 97, ¶ 3, 161 P.3d 495, 497 (Wyo.2007). We attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.

The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*RK v. State ex rel. Natrona County Child Support Enforcement Dep't*, 2008 WY 1, ¶ 10, 174 P.3d 166, 169 (Wyo.2008) (internal citations omitted).

[¶ 10] The WGCA begins by granting governmental entities broad immunity from tort liability:

A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112 and limited by W.S. 1–39–121.

Wyo. Stat. Ann. § 1–39–104(a). The first question to be resolved is whether the Irrigation District is a governmental entity to which immunity is granted.

[¶ 11] The term "governmental entity" is defined to include "the state, University of Wyoming or any local government." Wyo. Stat Ann. § 1–39–103(a)(i). In turn, the term "local government" is defined to include "cities and towns, counties, school districts, joint powers boards, airport boards, *public corporations,* community college districts, special districts and their governing bodies, all political subdivisions of the state, and their agencies, instrumentalities and institutions." Wyo. Stat. Ann. § 1–39–103(a)(ii)

(emphasis added). The Irrigation District asserts that it is a "public corporation," and so a governmental entity subject to immunity.[2]

[¶ 12] The WGCA does not define the term public corporation. However, in 1979 when the WGCA was enacted, a familiar source listed this definition:

An artificial person ... created for the administration of public affairs.... A public corporation is an instrumentality of the state, founded and owned in the public interest, supported by public funds and governed by those deriving their authority from the state.

*Black's Law Dictionary* 1105–06 (5th ed.1979). The Irrigation District is plainly an artificial person, being a corporate body duly organized pursuant to Wyo. Stat. Ann. § 41–7–201. It is founded and owned in the public interest, as indicated by the legislature's direction that the statutes concerning irrigation districts "shall be liberally construed *to promote the public welfare* by reclaiming and irrigating lands." Wyo. Stat. Ann. § 41–7–102 (emphasis added). To the extent that irrigation districts "promote the public welfare," they are created for the administration of public affairs. Irrigation districts derive their authority from the state, as demonstrated by the fact that they must be created by an order of the state district court. Wyo. Stat. Ann. § 41–7–210. Thus far, the Irrigation District fits comfortably within the definition of a public corporation.

[¶ 13] The question of whether the Irrigation District is supported by public funds is not so easily answered. Irrigation districts are not funded by taxes paid by the public at large, but rather, by assessments against district members. Wyo. Stat. Ann. §§ 41–7–401 through –415. However, the public nature of these assessments is established by other statutory provisions. An irrigation district's annual budget must be approved by the district court. Wyo. Stat. Ann. § 41–7–402. The assessments are approved, levied, and assessed by county commissioners. Wyo. Stat. Ann. § 41–7–403.

The county assessor must then "extend upon the tax roll of such county the respective amounts levied and assessed against each lot, tract and easement of land, and against each corporation as shown by said assessment roll of said districts." *Id.* The assessments are "collected by the same officer and in the same manner and at the same time as state and county taxes are collected." Wyo. Stat. Ann. § 41–7–404(a). Read together, these statutory provisions give the Irrigation District's assessments the character of public funds. Accordingly, we conclude that the Irrigation District satisfies all of the requirements of *Black's* definition of a public corporation.

[¶ 14] Further, while the legislature did not define the term "public corporation" in the WGCA, it did provide a definition in the statutes concerning water conservancy districts. There, a public corporation is defined to include:

counties, city and counties, towns, cities, school districts, *irrigation districts,* water districts, part districts, subdistricts, and all governmental agencies, clothed with the power of levying or providing for the levy of general or special taxes or special assessments.

Wyo. Stat. Ann. § 41–3–702(b) (emphasis added). While this definition may not apply directly under the WGCA, it does establish that the legislature considers irrigation districts to be public corporations for some purposes.

[¶ 15] Our conclusion that an irrigation district is a public corporation can be tested against other statutory provisions as well. "[I]n ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *Plymale v. Donnelly,* 2007 WY 77, ¶ 30, 157 P.3d 933, 940 (Wyo.2007), citing *McClean v. State,* 2003 WY 17, ¶ 6, 62 P.3d 595, 597 (Wyo.2003). The statutes dealing with irrigation districts expressly provide that the commissioners of an irrigation district are "declared to be public officers." Wyo. Stat.

2. The Irrigation District also took the position that it is a special district. The district court agreed. Given our conclusion that the Irrigation

District is a public corporation, we need not decide whether it also fits the definition of a special district.

Ann. § 41–7–301. Irrigation district commissioners must take "an oath to support the constitution of the United States and the constitution of the state of Wyoming." Wyo. Stat. Ann. § 41–7–302. Irrigation districts have the power to exercise eminent domain. Wyo. Stat. Ann. § 41–7–210(a)(iv)(E). They have the authority to issue bonds to secure indebtedness. Wyo. Stat. Ann. § 41–7–408. They must advertise for bids, and accept the lowest bid, for any work estimated to cost more than $7,500. Wyo. Stat. Ann. § 41–7–412. All of these statutory provisions tend to confirm our conclusion that irrigation districts are of such a public nature that they must be considered public corporations, and that the legislature intended to include irrigation districts among the governmental entities subject to immunity under the WGCA.

[¶ 16] Finally, we can test this conclusion against prior decisions of this Court. Significantly, we have expressly declared that irrigation districts are public corporations:

> An irrigation district, reclaiming, as it does, desert lands in the state, and accordingly conferring a benefit not alone upon the private individuals within the district, but also upon the people of the state as a whole, is a public, rather than a private corporation. Kinney on Irrigation and Water Rights, (2nd ed.) sec. 1404; 40 Cyc. 817.... They are ... special state organizations for state purposes with limited powers, created to perform certain work which the policy of the state requires or permits to be done and to which the state has given a certain degree of discretion in reclaiming desert lands.

*Sullivan v. Blakesley*, 35 Wyo. 73, 83–84, 246 P. 918, 921–22 (1926). In addition, in *Biddick v. Laramie Valley Municipal Irrigation Dist.*, 76 Wyo. 67, 72, 299 P.2d 1059, 1060 (1956), we affirmed a district court's finding that the "Laramie Valley Municipal Irrigation District is a public corporation." We find no Wyoming cases holding to the contrary.

[¶ 17] In their arguments against governmental immunity for irrigation districts, the Krennings point to a long line of Wyoming cases in which irrigation districts have been defendants. These cases range in age from *Big Goose and Beaver Ditch Co. v. Morrow*, 8 Wyo. 537, 59 P. 159 (1899), to *Reed v. Cloninger*, 2006 WY 37, 131 P.3d 359 (Wyo. 2006). They include *Wheatland Irrigation Dist. v. McGuire*, 537 P.2d 1128, 1140 (Wyo. 1975), in which we expressly recognized that owners of irrigation ditches and reservoirs are "charged with a duty of reasonable care in constructing, maintaining and operating [their] irrigation works and facilities." The Krennings contend that holding irrigation districts subject to governmental immunity ignores or overrules these prior decisions.

[¶ 18] Careful review of the cases cited reveals that all are distinguishable from the present case. Some of these cases involved private irrigation districts or canal companies, which were plainly not subject to governmental immunity. *See, e.g., Tillery v. West Side Canal, Inc.*, 719 P.2d 1384 (Wyo. 1986); *Pine Creek Canal No. 1 v. Stadler*, 685 P.2d 13 (Wyo.1984). Nearly all of the cases, including *Wheatland Irrigation Dist.*, 537 P.2d 1128, were decided prior to the enactment of the WGCA. We are not ignoring or overruling these cases, only interpreting the legislature's intent as expressed in the WGCA. Finally, in *Reed*, 131 P.3d 359, the Shoshone Irrigation District was a defendant, and the case was decided after the passage of the WGCA. However, the issue of governmental immunity was not raised by the parties or considered by the Court. That may be because, although the suit initially sought damages from the irrigation district, "[e]ventually, the Reeds withdrew their claim for damages vis-à-vis the District, and asked only that irrigation in that area be enjoined." *Id.*, ¶ 7, 131 P.3d at 363. The WGCA grants "immunity from liability for any tort," Wyo. Stat. Ann. § 1–39–104(a), but it does not preclude a claim for injunctive relief against an irrigation district.

[¶ 19] Another argument raised by the Krennings is more troubling. They point out that the WGCA was enacted generally to limit the scope of governmental immunity, not to expand it. As we have previously observed, "in adopting the Governmental Claims Act, the legislature recognized and embraced the ***curtailment of governmental immunity*** initiated by the judiciary." *Ham-*

*lin v. Transcon Lines,* 701 P.2d 1139, 1144 (Wyo.1985) (emphasis added). The Krennings assert that because irrigation districts did not enjoy governmental immunity prior to the enactment of the WGCA, extending governmental immunity to irrigation districts after the enactment of the WGCA is contrary to the general purpose of that act.

[¶ 20] While this argument has merit, we are compelled to reject it. As stated above, under our rules of statutory construction, we must interpret a statute based on the plain and ordinary meaning of the words used in the statute. The WGCA expressly grants governmental immunity to public corporations. Irrigation districts are public corporations, as shown by the ordinary definition of a public corporation, other legislative provisions, and previous holdings by this Court. Thus, the WGCA unambiguously grants governmental immunity to irrigation districts.

> When the words used are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.... If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law.... This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment or gloss.

*State, ex rel., Dept. of Revenue v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 16, 18 P.3d 1182, 1187 (Wyo.2001), quoting *Allied–Signal, Inc. v. Wyoming State Board of Equalization,* 813 P.2d 214, 219 (Wyo.1991). In light of our recognition that the language selected by the legislature is clear and unambiguous, we must conclude that the WGCA provides governmental immunity to irrigation districts.

**2.** *Is the Irrigation District a "public utility" for which governmental immunity has been waived?*

[¶ 21] As noted above, the WGCA provides broad governmental immunity from tort liability. However, it also establishes a number of specified exceptions. The Krennings seek to apply this exception to the Irrigation District:

> A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation.

Wyo. Stat. Ann. § 1–39–108(a). The Krennings say that the Irrigation District supplies water as a public utility, and so governmental immunity has been waived for their negligence claims against the Irrigation District. We note that the question of whether an irrigation district is a public utility is also one of first impression for this Court.

[¶ 22] The WGCA does not define the term public utility, but the Krennings point to this definition from the statutes governing public utilities:

> (vi) "Public utility" means and includes every person that owns, operates, leases, controls or has power to operate, lease or control: ...
>
>> (E) Any plant, property or facility for the supply, storage, distribution or furnishing to or for the public of water for manufacturing, municipal, agriculture or domestic uses, except and excluding any such plant, property or facility owned by a municipality;

Wyo. Stat. Ann. § 37–1–101(a). We agree that this definition provides a useful indication of what the legislature meant by the term public utility as used in the WGCA.

[¶ 23] The Krennings rely on the fact that the Irrigation District supplies, distributes, or furnishes water for agricultural uses, which they say brings the Irrigation District within the statutory definition of a public utility. In contrast, the Irrigation District asserts that it does not supply water "to or for the public," but only to its members. Accordingly, the Irrigation District says that it does not fit the definition of a public utility.

[¶ 24]   We have previously explained that the statutory phrase "to or for the public" refers to "sales to sufficient of the public to clothe the operation with a public interest." *Phillips Petroleum Co. v. Public Service Comm'n of Wyoming*, 545 P.2d 1167, 1171 (Wyo.1976), citing *Iowa State Commerce Comm'n v. Northern Natural Gas Co.*, 161 N.W.2d 111, 115 (Iowa 1968), and *Griffith v. New Mexico Public Service Comm'n*, 86 N.M. 113, 116, 520 P.2d 269, 272 (1974). Applying that definition, we determined that a company supplying natural gas to a single purchaser did not supply gas "to or for the public," and was not a public utility. *Phillips Petroleum*, 545 P.2d at 1172. Similarly, in *Bridle Bit Ranch Co. v. Basin Elec. Power Coop.*, 2005 WY 108, ¶ 31, 118 P.3d 996, 1011 (Wyo.2005), we considered the status of an electric company supplying wholesale electricity only to distribution cooperatives that, in turn, distributed the electricity in the retail market. We concluded that supplying electricity to a limited number of distribution cooperatives was not supplying it "to or for the public," and that the electric company was not a public utility.

■■■ [¶ 25]   We have also explained that the test for a public utility is not the absolute number of persons it serves, but whether it is devoted to public use. *Rural Elec. Co. v. State Bd. of Equalization*, 57 Wyo. 451, 471–72, 120 P.2d 741, 747 (1942). In that case, we held that a rural electric company was a public utility, despite the fact that it provided electricity only to its members. Indications that it was devoted to public use included the facts that it had "solicited practically everyone in that territory" to become members, and it "accepted substantially all requests for service of its commodity." *Id.* at 482, 120 P.2d at 751. This ruling supports the concept that a public utility is "open to the use and service of all members of the public who may require it." 73B C.J.S. *Public Utilities* § 2 (2008).

[¶ 26]   By Wyoming statute, an irrigation district may include only those lands that benefit from the irrigation works. Wyo. Stat. Ann. § 41–7–203. It makes assess-ments only against the owners of those lands. *See Gies v. Boehm*, 78 Wyo. 449, 463–64, 329 P.2d 807, 813 (1958); *Biddick*, 299 P.2d at 1064–65. In this case, the Krennings do not dispute the Irrigation District's position that "it serves only a limited class of individuals, those who are actually members [of] the irrigation district." While there may be a substantial number of members,[3] still membership in the Irrigation District is a small subset of the public at large. As the district court stated in its decision letter, there is "no reason to believe that any type of products or services are being sold by the District to the general public." These facts support the conclusion that the Irrigation District is not a public utility, just as an electric company supplying electricity to a limited number of distributors was not a public utility. *See Bridle Bit*, ¶ 31, 118 P.3d at 1011.

[¶ 27]   The Krennings do not contend that the Irrigation District solicits practically everyone to become members, or that it accepts substantially all requests for its commodity. This is in direct contrast with *Rural Elec. Co.*, 120 P.2d at 751, where such facts indicated that the electric cooperative was a public utility. The Krennings do not contend that this Irrigation District, or any other in the state, has ever been regulated as a public utility by the Wyoming Public Service Commission. Based on these facts, we must agree with the district court's conclusion that the Irrigation District does not supply water "to or for the public," and affirm its ruling that the Irrigation District is not a public utility.

**3.   Did the district court properly grant summary judgment to Mr. Flowers as an employee of the Irrigation District?**

■■ [¶ 28]   The WGCA extends governmental immunity to the "governmental entity and its public employees while acting within the scope of duties." Wyo. Stat. Ann. § 1–39–104(a). On that basis, the district court granted summary judgment to Mr. Flowers, ruling that he, as an employee of the Irrigation District, was also subject to governmental immunity. However, the Krennings point

---

**3.**   The Irrigation District did not cite current figures, but by way of illustration, when it was organized in 1953 it had approximately 225 members.

out that their complaint alleged Mr. Flowers committed an intentional assault and battery against Mr. Krenning. On appeal, they maintain that the actions of Mr. Flowers were outside the scope of his duties as an employee of the Irrigation District and that Mr. Flowers is not entitled to governmental immunity as an employee of the Irrigation District.

[¶ 29] The Krennings correctly contend that Mr. Flowers is not entitled to governmental immunity for actions outside the scope of his employment with the Irrigation District. Wyo. Stat. Ann. § 1–39–108(a) grants immunity only for "public employees while acting within the scope of their duties." The problem for the Krennings, however, is that none of their pleadings ever alleged that Mr. Flowers had acted outside the scope of his employment. To the contrary, the complaint filed by the Krennings, under the heading "Facts Common to All Counts," included these allegations:

7. On October 4, 2004, Defendant James Flowers, (hereinafter FLOWERS), was employed by Defendant HEART MOUNTAIN and *acting within the scope of his employment* for Defendant HEART MOUNTAIN. Defendant FLOWERS was driving a vehicle provided to him by Defendant HEART MOUNTAIN and was accompanied by another employee of Defendant HEART MOUNTAIN, Glen House, a ditch rider.

8. On October 4, 2004, Defendant FLOWERS, while *acting within the scope of his employment,* met with Plaintiff STEVEN M. KRENNING along a [sic] irrigation ditch road owned or maintained by Defendant HEART MOUNTAIN.

(Emphasis added.) These express allegations that Mr. Flowers was "acting within the scope of his employment" were incorporated, by reference, into each and every one of the Krennings' causes of action. Of particular note, their third cause of action, alleging the intentional tort of assault and battery, explicitly incorporated the allegations that Mr. Flowers was acting within the scope of his employment:

20. Plaintiffs adopt and incorporate by reference all allegations contained in paragraphs 1 through 19, previously recited, the same as if they were set forth herein in their entirety.

21. While present on the irrigation ditch right-of-way, a place where Plaintiff STEVEN M. KRENNING has a legal right to be, Defendant FLOWERS assaulted, battered and inflicted injury upon Plaintiff STEVEN M. KRENNING.

We have reviewed the district court pleadings carefully, and did not find any allegation that Mr. Flowers had acted outside the scope of his employment.

[¶ 30] "We have previously determined that notice pleading is recognized by our rules of civil procedure." *BB v. RSR,* 2007 WY 4, ¶ 12, 149 P.3d 727, 732 (Wyo. 2007). Litigants need not present their claims in any technical language or form, and pleadings must be liberally construed to ensure substantial justice. *Harris v. Grizzle,* 599 P.2d 580, 583 (Wyo.1979); *see also* W.R.C.P. 8(e)(1), 8(f). However, notice pleading imposes the "fundamental ... obligation of every pleader to apprise his adversary of the nature of the claim against him." *Glover v. Giraldo,* 824 P.2d 552, 556 (Wyo. 1992). A complaint is sufficient if it provides the opposing party fair notice of the claims against him. *Lynch v. Patterson,* 701 P.2d 1126, 1134 (Wyo.1985). *See also Jackson State Bank v. Homar,* 837 P.2d 1081, 1085–86 (Wyo.1992).

[¶ 31] We have applied this standard to the Krennings' pleadings in this case. It may be, as the Krennings assert, that assault and battery seem unlikely to fall within the scope of Mr. Flowers' duties as an employee of the Irrigation District. On that basis, the Krennings claim that their cause of action for assault and battery necessarily implied the allegation that Mr. Flowers had acted beyond the scope of his employment. However, such an implication cannot overcome the Krennings' express allegations that he was acting within the scope of his employment. In the face of those express allegations, a mere implication could not fairly apprise Mr. Flowers that claims were being brought against him for actions outside the scope of his employment.

[¶ 32] Accordingly, while the Krennings could have brought claims against Mr. Flowers alleging he had acted outside the scope of his employment, we agree with the district court that they did not. All of the allegations in the complaint were expressly made against Mr. Flowers as an employee of the Irrigation District. In that capacity, he is subject to governmental immunity, and summary judgment was properly granted in his favor.

### 4. Does governmental immunity violate the equal protection guarantees of the Wyoming Constitution?

[¶ 33] Finally, the Krennings assert that granting governmental immunity to an irrigation district and its employees is contrary to Wyoming's constitutional guarantees of equal protection under the law.[4] The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional. *Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995). That burden is a heavy one "in that the appellant must 'clearly and exactly show the unconstitutionality beyond any reasonable doubt.'" *Cathcart v. Meyer,* 2004 WY 49, ¶ 7, 88 P.3d 1050, 1056 (Wyo.2004), quoting *Reiter v. State,* 2001 WY 116, ¶ 7, 36 P.3d 586, 589 (Wyo.2001). In our analysis, we presume "the statute to be constitutional.... Any doubt in the matter must be resolved in favor of the statute's constitutionality." *Thomson v. Wyoming In–Stream Flow Committee,* 651 P.2d 778, 789–90 (Wyo.1982) (internal citations omitted). We apply a three-element test requiring: (1) identification of the legislative classification at issue; (2) identification of the legislative objectives; and (3) determination of whether the legislative classification is rationally related to the achievement of an appropriate legislative purpose. *Greenwalt v. Ram Rest. Corp.,* 2003 WY 77, ¶ 40, 71 P.3d 717, 732 (Wyo.2003).

[¶ 34] The Krennings have failed to carry this heavy burden. Their identification of the legislative classification is less than lucid. They state only that the "legislative classification which is at issue in this case is immunity granted to non-taxpayer 'special districts' or 'public corporations.'" This establishes only one group, with no indication of what the opposing classification might be, or of how the two groups are subject to different treatment or unequal protection.

[¶ 35] The Krennings have also failed to show that granting governmental immunity to the Irrigation District is not rationally related to an appropriate legislative purpose. They assert that the legislative purpose of governmental immunity is to protect taxpayers, and because the Irrigation District is not supported by taxes, there is no rational legislative purpose served by granting the Irrigation District governmental immunity. The Krennings have read the legislative purpose too narrowly.

[¶ 36] The legislative objective in enacting this statute was expressly set forth by the legislature as follows:

> The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming Supreme Court decision of *Oroz v. Board of County Commissioners,* 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions

---

4. As a preliminary matter, we note that the Wyoming Constitution contains no single equal protection clause, but rather, a cluster of clauses (art. 1, §§ 2, 3, and 34, and art. 3, § 27) that, together, create the state's functional equivalent of the federal equal protection clause, U.S. Const. amend. XIV, § 1. *See Greenwalt v. Ram Rest. Corp.,* 2003 WY 77, ¶ 39, 71 P.3d 717, 730 (Wyo.2003). In the statement of issues in their

brief, the Krennings also list the due process provision of the Wyoming Constitution, art. 1, § 6, and the open courts provision of art. 1, § 8. However, their brief contains no argument or discussion of these latter provisions, so we deem those arguments waived, and confine our discussion to an equal protection analysis. *See Ultra Res., Inc. v. McMurry Energy Co.,* 2004 WY 121, ¶¶ 7–8, 99 P.3d 959, 962 (Wyo.2004).

and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers.

Wyo. Stat. Ann. § 1–39–102(a). While this statement of legislative purpose does speak about protecting taxpayers, as we concluded above, the assessments by irrigation districts are funds of a public nature and those paying such assessments are similar to taxpayers. The statute also recognizes that some services are available only through the public sector, and indicates that the provision of such services should be fostered. Moreover, in determining legislative purpose, we "may properly consider not only the language of the statute but also general public knowledge about ... prior law." *Greenwalt,* ¶ 39, 71 P.3d at 730–31. As an expression of that prior law, we turn again to this statement made many years ago:

> An irrigation district, reclaiming, as it does, desert lands in the state, and accordingly conferring a benefit not alone upon the private individuals within the district, but also upon the people of the state as a whole, is a public, rather than a private corporation.

*Sullivan,* 246 P. at 921. In light of the public benefits conferred by irrigation districts, it is apparent that there is a rational relationship to an appropriate legislative purpose served by extending governmental immunity to irrigation districts. The Krennings have not carried their burden of demonstrating that the WGCA's grant of immunity to irrigation districts is unconstitutional "clearly and exactly" or "beyond any reasonable doubt." *Cathcart,* ¶ 7, 88 P.3d at 1056. We affirm the district court's grant of summary judgment in favor of the Heart Mountain Irrigation District and Mr. Flowers.