KAUTZ, Justice.
[¶1] Appellants Dominic J. Whitham and Kimberly A. Whitham are the parents of Appellant Benjamin F. Whitham (hereinafter referred to collectively as "the Whithams"). The Whithams filed a complaint against Appellees Park County School District #1 (school district) and school district employees Denise Feller, Kerri Boggio and Jerold Haire (hereinafter referred to collectively as "the appellees"). The Whithams alleged the school district employees had committed various torts against them and the school district was liable for the employees' actions under the doctrine of respondeat superior. The Whithams also claimed the school district had committed direct acts of negligence. The district court dismissed the case under W.R.C.P. 12(b)(6), concluding from the allegations in the Whithams' complaint, the appellees were immune from suit under the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1-39-101 through 1-39-121 (WGCA).
[¶2] We affirm.
ISSUES
[¶3] The Whithams present the following issues, which we restate as:
1. Whether the district court properly granted the appellees' Rule 12(b)(6) motion to dismiss because they were immune from suit under the WGCA.
2. Whether the district court properly dismissed the complaint with prejudice.
FACTS
[¶4] The Whithams filed a complaint against the appellees, alleging thirty counts related to six-year-old Benjamin's treatment at school.[1] Given this case was resolved by dismissal under Rule 12(b)(6), we consider the facts alleged in the complaint as true and view them in the light most favorable to the Whithams. The Tavern, LLC v. Town of Alpine, 2017 WY 56, ¶ 21, 395 P.3d 167, 173 (Wyo. 2017) (citing Elworthy v. First Tennessee Bank, 2017 WY 33, ¶ 20, 391 P.3d 1113, 1119 (Wyo. 2017) ).
*1266 [¶5] Counts 1 through 4 pertained to an incident which took place at Clark Elementary School in Park County, Wyoming on October 23, 2015. Ms. Feller restrained Benjamin when he ran into the hallway and would not release him to let Mr. Whitham in the building. Benjamin expressed pain while in the hold, and Ms. Feller told Mrs. Whitham she did not think she had performed the hold correctly. The Whithams asserted Ms. Feller's actions amounted to negligence, battery, and child endangerment. They claimed Ms. Feller was acting in her "official capacity" as a teacher for the school district and within the scope of her employment or agency, making the school district liable for her actions under the doctrine of respondeat superior.
[¶6] Counts 5 through 8 pertained to an incident on November 2, 2015, at Clark Elementary School. In those counts, the Whithams claimed the school district directed Ms. Boggio to observe Benjamin's behavior at school, and she was "suggested (sic) [to] let [Benjamin] run[,] don't chase-call cops if he goes out of school grounds (aides will not deal with him)." She let him go "no limits" in the gymnasium, allowing him to climb on chairs and tables and over a wall into the library. Ms. Boggio finally restrained Benjamin, but did not give his parents written notice of the hold as required by district policy.
[¶7] Ms. Boggio allegedly told Mr. Whitham that Benjamin had threatened her with a stick, so she had taken the stick away and told him she would "hit him back with it." Mr. Whitham also alleged that while he was placing the child in his car seat, Ms. Boggio opened the door of the Whithams' car without permission and rummaged through the items in the front seat of the vehicle. Based on these incidents, the Whithams asserted Ms. Boggio had committed civil trespass, negligence and assault. They claimed Ms. Boggio was acting in her "official capacity as a teacher," and the school district was liable under respondeat superior for her actions because she was acting within the scope of her employment or agency.
[¶8] Counts 9 through 15 pertained to incidents that allegedly occurred on November 5, 2015, at Clark Elementary School. The Whithams pled that Mr. Haire was sent to observe and videotape Benjamin's behavior. He allowed the child to climb on tables in the gymnasium; climb through a service window into the kitchen; climb on the stove, countertops and center island; access food service items, including utensils, sharp knives and ceramic mugs; and throw the food service items across the kitchen. The Whithams alleged Mr. Haire eventually "attacked" Benjamin by pushing a wheeled service tray straight at him, kicking a large metal bowl at him, and "dumping" two large rolls of plastic on his head. They also asserted Mr. Haire showed the confidential video throughout the school. The Whithams further claimed Ms. Feller was Benjamin's custodian during the incident and did nothing to protect him. The Whithams asserted claims of negligence, child endangerment, and assault against Mr. Haire and negligence and child endangerment against Ms. Feller. They claimed both employees acted in their official capacities and their actions were attributable to the school district, making it liable under respondeat superior.
[¶9] Counts 16 through 25 pertained to incidents that occurred at the Powell Special Services Building on February 26, 2016. The Whithams alleged Ms. Boggio and Mr. Haire had a conversation about a "thing [they] were planning" involving Benjamin. Later that day, they restrained Benjamin, allegedly hurting him. Ms. Boggio reported to law enforcement that Benjamin "was suicidal and a danger to himself and others," and he was taken into protective custody. Based on the events of February 26, 2016, the Whithams asserted causes of action against Ms. Boggio for false reporting, intentional infliction of emotional distress, negligence, battery, and child endangerment and against Mr. Haire for intentional infliction of emotional distress, negligence, battery, and child endangerment. They generally alleged Ms. Boggio and Mr. Haire were acting in their official capacities and their actions were attributable to the school district under respondeat superior.
[¶10] The Whithams asserted five additional counts (Counts 26 through 30) of direct negligence against the school district. In general, they alleged the school district had violated its policies and failed to train and supervise staff regarding corporeal punishment, *1267 student restraints, evaluation of behavioral and learning problems, interviewing of students by law enforcement, and placement of the child within the school district.
[¶11] The appellees filed a motion to dismiss under Rule 12(b)(6), claiming they were immune from suit pursuant to the WGCA. In response, the Whithams asserted that the waiver of immunity for "public utilities" in § 1-39-108 applied to school districts. The Whithams also argued that the school district employees were not immune because, by violating school policy and potentially criminal statutes, they were acting outside the scope of their duties.
[¶12] The district court held a hearing and issued an order dismissing the Whithams' complaint with prejudice. It concluded the WGCA governed the case and no exception to immunity applied to the Whithams' claims. The Whithams appealed.
STANDARD OF REVIEW
[¶13] We review a district court's decision granting a Rule 12(b)(6) motion to dismiss de novo. Bush Land Dev. Co. v. Crook County Weed & Pest Control Dist., 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017) ; Sorensen v. State Farm Automobile Ins. Co., 2010 WY 101, ¶ 7, 234 P.3d 1233, 1235-36 (Wyo. 2010).
"When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief."
Herrig v. Herrig, 844 P.2d 487, 490 (Wyo.1992) (citation omitted), quoted in Davis v. State, 910 P.2d 555, 560 (Wyo.1996). Although dismissal is a drastic remedy which should be granted sparingly, a motion to dismiss "is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." Feltner v. Casey Family Program, 902 P.2d 206, 208 (Wyo.1995) (quoting Mummery v. Polk, 770 P.2d 241, 243 (Wyo.1989) ).
Rissler & McMurry Co. v. State, 917 P.2d 1157, 1160 (Wyo.1996), cert. denied, 519 U.S. 1091, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997).
Bush Land Dev. Co, ¶ 7, 388 P.3d at 539 (quoting WW Enterprises, Inc. v. City of Cheyenne, 956 P.2d 353, 355 (Wyo. 1998) ). See also , The Tavern, LLC, ¶ 21, 395 P.3d at 173.
DISCUSSION
A. Scope of Duties
[¶14] Section 1-39-104(a) states: "A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 1-39-112." The definition of "governmental entity" includes "local government," and the definition of "local government" includes "school districts." Section 1-39-103(a)(i) and (ii). As such, the WGCA generally grants immunity to school districts and school district employees for torts committed while acting within the scope of their duties, unless a specific exception applies. See SH v. Campbell County School Dist. No. 9, 2018 WY 11, ¶ 4, 409 P.3d 1231, 1233 (Wyo. 2018) ; Fugle v. Sublette County School Dist., 2015 WY 98, ¶¶ 6-8, 353 P.3d 732, 734-35 (Wyo. 2015) (recognizing the WGCA applies to school districts).
[¶15] The Whithams argue the district court erred by dismissing their claims against the school district employees because they were acting outside the scope of their duties and, therefore, are not immune under the WGCA. It is true that the school district employees would not be immune under the WGCA for actions outside of the scope of their duties. See § 1-39-104(a); Krenning v. Heart Mountain Irr. Dist., 2009 WY 11, ¶ 29, 200 P.3d 774, 783 (Wyo. 2009). Therefore, in reviewing the district court's Rule 12(b)(6) dismissal, we must consider whether the Whithams properly alleged the employees acted outside the scope of their duties.
[¶16] As we stated in the "Facts" section, supra, the Whithams' complaint was organized by date. The complaint alleged a series of counts against the individual school district *1268 employees for each date, followed by a respondeat superior count. In each respondeat superior count, the complaint specifically referenced the corresponding counts against the individual employees, stated the acts were "contributed" [attributed] to the school district, and generally alleged the employees were acting within the scope of their employment or agency. For example, Counts 1 through 3 alleged that Ms. Feller committed negligence, battery, and child endangerment for her actions on October 23, 2015. Count 4 stated in pertinent part:
Count 4: Respondent Superior-Park County School
District #1
41. Plaintiffs[ ] restate all prior allegations as if set forth in detail herein.
42. That all actions by Defendant Feller as alleged in Counts 1-3 are hereby contributed [sic] to PCSD #1 under the doctrine of Respondent Superior. Whereby PCSD #1 is the employer or principal legally responsible for the wrongful acts of its employee or agent, and as such acts occurred within the scope of Defendant Feller's employment or agency.
....
[¶17] The Whithams continued this pleading style throughout the complaint. The only exceptions, which appear to be typographical errors, are in Counts 15 and 25, which alleged the school district was responsible under the doctrine of respondent superior for Mr. Haire's and Ms. Feller's actions (Count 15) and Mr. Haire's and Ms. Boggio's actions (Count 25).
[¶18] Count 15 (quoted with errors) stated:
Count 15: Respondent Superior-Park County School
District #1
119. Plaintiffs' restate all prior allegations as if set forth in detail herein.
120. That all actions by Defendants Defendant Haire and Defendant Feller as alleged in Counts 9-14 are hereby contributed to PCSD #1 under the doctrine of Respondent Superior. Whereby PCSD #1 is the employer or principal legally responsible for the wrongful acts of an employee or agent, as such acts occurred within the scope of Defendant's, Defendant Haire, employment or agency.
Count 25 was essentially the same except that Ms. Boggio, rather than Ms. Feller, was named.
[¶19] Although Counts 15 and 25 attribute the actions of the individual employees to the school district, they only mention Mr. Haire as acting within the scope of his employment. Even giving this language all favorable inferences in favor of the Whithams, it is impossible to say that they pleaded the employees who were not specifically mentioned (Ms. Feller and Ms. Boggio) were acting outside the scope of their employment. Such an interpretation would be diametrically opposed to the remainder of those two counts which assert the school district should be held responsible for the individual school district employees' actions. Furthermore, later in the complaint, the Whithams assert the "actions under the Complaint fall within the purview of the Wyoming Governmental Claims Act," which assumes the employees acted within the scope of their employment. In all but the two intentional infliction of emotional distress counts, the Whithams also allege the employees acted in their "official capacit[ies]" as employees of the school district.
[¶20] The Whithams attempt to distinguish "official capacity" and "scope of employment" from the language used in the WGCA-"scope of duties." "[S]cope of duties" is defined as "performing any duties which a governmental entity requests, requires or authorizes a public employee to perform regardless of the time and place of performance." Section 1-39-103(a)(v). In Krenning, ¶ 29, 200 P.3d at 783, we held that, by expressly alleging the employee was acting "within the scope of his employment," the plaintiffs alleged he was acting within his "scope of duties." The allegations in this case are indistinguishable from those in Krenning.
[¶21] Similarly, we said in Kanzler v. Renner, 937 P.2d 1337, 1344 (Wyo. 1997), that, when a police officer acts outside the scope of his duties, he is not acting in his official capacity. Although Kanzler addressed qualified immunity for police officers rather than the WGCA, the preliminary inquiry, like in governmental claims cases, was whether the *1269 defendant was acting within the scope of his duties. Id. We stated:
The preliminary inquiry is whether Renner was acting within the scope of his duties. When an official acts outside the scope of his authority, he acts individually and not in his official capacity and, therefore, he cannot claim the protection of qualified immunity. Oyler v. State, 618 P.2d 1042, 1047 (Wyo.1980).
Id. Kanzler establishes an employee cannot both act in his official capacity-within the scope of his duties-and act individually outside his official capacity simultaneously. In other words, Kanzler held "scope of duties" and "official capacity" have the same meaning for purposes of immunity from suit.
[¶22] The Whithams also seem to argue that, because they alleged facts showing the school district employees may have violated school policy or the criminal code, they properly alleged that the employees acted outside the scope of their duties. We addressed and rejected a similar argument in Krenning, ¶¶ 31-32, 200 P.3d at 783-84 :
It may be, as the Krennings assert, that assault and battery seem unlikely to fall within the scope of Mr. Flowers' duties as an employee of the Irrigation District. On that basis, the Krennings claim that their cause of action for assault and battery necessarily implied the allegation that Mr. Flowers had acted beyond the scope of his employment. However, such an implication cannot overcome the Krennings' express allegations that he was acting within the scope of his employment. In the face of those express allegations, a mere implication could not fairly apprise Mr. Flowers that claims were being brought against him for actions outside the scope of his employment.
Accordingly, while the Krennings could have brought claims against Mr. Flowers alleging he had acted outside the scope of his employment, we agree with the district court that they did not. All of the allegations in the complaint were expressly made against Mr. Flowers as an employee of the Irrigation District. In that capacity, he is subject to governmental immunity, and summary judgment was properly granted in his favor.
Although the Whithams could have alleged that the school district employees were acting outside the scope of their duties, they did not.[2] Given they specifically alleged the employees' acted within their scope of duties, the WGCA applied to the actions of Feller, Boggio and Haire as alleged in the Whithams' complaint.
B. WGCA Exception to Immunity
[¶23] As we stated earlier, school districts are immune from liability for any tort except as specifically set out in the WGCA. Section 1-39-104(a). The district court determined no exception to immunity under the WGCA applies to this case. Although the Whithams asserted below that the school district came within the public utility exception to immunity under § 1-39-108, they do not challenge the district court's determination that school districts are not included within that exception. Instead, they make an obscure argument that this Court should balance the respective equities and recognize an exception to immunity for violations of school policy and/or criminal conduct.
[¶24] The Whithams' position is directly contradicted by the WGCA and our case law interpreting the act. When it adopted the WGCA, the Wyoming Legislature balanced the equities between the "inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity" and the need to provide governmental services while protecting the public coffers. Section 1-39-102(a). See also , Archer v. Wyo. Dep't of Trans., 2018 WY 28, ¶ 7, 413 P.3d 142, 145-46 (Wyo. 2018) (stating that "balance was struck by a general grant of immunity to 'a governmental entity and its public employees while acting within the scope of duties ... except as provided by W.S. 1-39-105 through 1-39-112.' [Section] 1-39-104(a)" (emphasis omitted) ). It is not this Court's prerogative to expand the exceptions to immunity beyond that provided by the legislature in the WGCA. Id. Consequently, we reject the Whithams' request to recognize *1270 an exception to immunity for violation of school policy and/or criminal conduct.
C. Dismissal with Prejudice
[¶25] The Whithams argue that, even if the district court properly dismissed their complaint for failure to state a claim, it should have done so without prejudice, rather than with prejudice. W.R.C.P. 41(b)(1) states, in relevant part: "Unless the dismissal order states otherwise, a dismissal under subdivision (b) and any dismissal not under this rule-except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19-operates as an adjudication on the merits." At the time of the dismissal, there was no pending motion to amend the complaint and the Whithams offer no cogent argument or pertinent authority as to why Rule 41 should not apply. Consequently, we will not consider this issue further. Hodson v. Sturgeon, 2017 WY 150, ¶ 6, 406 P.3d 1264, 1265 (Wyo. 2017) (refusing to consider a claim unsupported by cogent argument and pertinent legal authority).
[¶26] Affirmed.

The Whithams stated in their complaint that they had served a governmental claim upon the school district, and the appellees do not contest that assertion.

Our decision is limited to the propriety of the Whithams' pleading. We offer no opinion on whether the school district employees' actions were or were not within the scope of their duties.