FOX, Justice.
[¶ 1] Linda Gelok is an involuntarily committed incompetent person who was injured after being left unattended for 25 hours at the Wyoming State Hospital. On her behalf, Ms. Gelok's guardian and conservator, Wyoming Guardianship Corporation,[1] sued the Wyoming State Hospital (WSH); the Wyoming Department of Health (Department); and Paul Mullenax, WSH Administrator, in his official and individual capacities, alleging negligence and violation of her constitutional rights under 42 U.S.C. § 1983. The district court found the negligence action time-barred and dismissed it. It also found that the WSH, the Department, and Mr. Mullenax in his official capacity were entitled to Eleventh Amendment immunity and dismissed the constitutional claims against them. Finally, it found that Mr. Mullenax was entitled to qualified immunity in his individual capacity and dismissed the constitutional claim against him. We affirm in part and reverse in part.
ISSUES
[¶ 2] We rephrase and reorganize Ms. Gelok's issues on appeal:
1. Do the notice and filing requirements of the Wyoming Governmental Claims Act extend the medical malpractice statute of limitations in Wyo. Stat. Ann. § 1-3-107 ?
2 Did Ms. Gelok's Complaint allege sufficient facts to state a claim for relief under 42 U.S.C. § 1983 ?
FACTS
[¶ 3] At the time of the incident giving rise to this appeal, Ms. Gelok was a sixty-two-year-old woman who had been diagnosed with schizophrenia, post-traumatic stress disorder, dementia, and borderline intellectual functioning.[2] She had spent many years at various mental health institutions, including a significant amount of time at the WSH. On February 23, 2015, WSH staff found her sitting in the hospital's dayroom with her neck kinked awkwardly. When approached, she stated, "I'm going to die, you're going to let me die." She was anxious, trembling, breathing rapidly, and reeked of urine. As staff members attempted to lift her from her chair to walk her to the hospital's "OT room," they noticed numerous ants crawling on her foot. During a physical examination, WSH staff found dried blood on Ms. Gelok's visibly swollen feet, ants crawling on dark red abrasions on her feet and ankles, and insect bites. A WSH nurse practitioner diagnosed her bleeding abrasions as a "rash" and prescribed her prednisone.
[¶ 4] When Wyoming Guardianship Corporation became aware of the situation, it ordered *429 that Ms. Gelok be taken to Evanston Regional Hospital (ERH). At ERH, hospital staff placed Ms. Gelok on oxygen, diagnosed her with a urinary tract infection, and treated her abrasions. When Ms. Gelok returned to WSH, she had a poor appetite, displayed paranoid delusions, was described as "despondent," and complained of pain around her wounds.
[¶ 5] Later investigation revealed that Ms. Gelok had been sitting in nearly the same position on the couch in the dayroom for approximately 25 hours. During that time, no one gave her food or water, took her to the bathroom, changed her, or took her to bed. Hospital staff had done some cursory "checks" into the dayroom, but none of them noticed Ms. Gelok until maintenance staff requested that she be moved so they could work on the television. Investigators noticed food on the floor in several areas of the hall and observed that the dining room area floor was very dirty with food and possibly human feces. Hospital staff confirmed that the hospital had an ongoing ant-infestation problem.
[¶ 6] On May 12, 2016, Ms. Gelok presented a notice of claim to the appropriate governmental entities, in compliance with Wyo. Stat. Ann. § 1-39-113. On June 10, 2016, she filed a claim with the Wyoming Medical Review Panel, as required by Wyo. Stat. Ann. § 9-2-1518. The panel dismissed the claim on August 11, 2016. Ms. Gelok filed her Complaint in the district court on August 9, 2017, asserting claims for negligence and for violation of her right to safe and humane living conditions under 42 U.S.C. § 1983.[3] The district court granted the State's Rule 12(b)(6) Motion to Dismiss, and Ms. Gelok filed a timely Notice of Appeal.
DISCUSSION
I. Do the notice and filing requirements of the Wyoming Governmental Claims Act extend the medical malpractice statute of limitations in Wyo. Stat. Ann. § 1-3-107 ?
[¶ 7] We review orders granting a motion to dismiss under Rule 12(b)(6) de novo. Whitham v. Feller , 2018 WY 43, ¶ 13, 415 P.3d 1264, 1267 (Wyo. 2018). Because statutory construction is a question of law, our standard of review is again de novo. Redco Constr. v. Profile Properties, LLC , 2012 WY 24, ¶ 26, 271 P.3d 408, 415-16 (Wyo. 2012) (quoting Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals , 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo. 2010) ). This case requires us to consider the relationship between the WGCA and Wyo. Stat. Ann. § 1-3-107. Our rules for this task are well established. "In interpreting statutes, our primary consideration is to determine the legislature's intent." Id. "We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." Id. "With specific regard to the Wyoming Governmental Claims Act, we have said that we should not 'enlarge, stretch, expand or extend' " its statutory language. Archer v. State ex rel. Wyo. Dep't of Transp. , 2018 WY 28, ¶ 7, 413 P.3d 142, 146 (Wyo. 2018) (quoting Fugle v. Sublette Cty. Sch. Dist. No. 9 , 2015 WY 98, ¶ 8, 353 P.3d 732, 734-35 (Wyo. 2015) ). Likewise, we "will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly." Id . at ¶ 7, 413 P.3d at 146.
[¶ 8] Ms. Gelok alleges that the WSH and its employees negligently rendered health care services. She filed suit under section 1-39-110 of the Wyoming Governmental Claims Act (WGCA), which waives governmental immunity "for damages ... caused by the negligence of health care providers who are employees of [a] governmental entity ... while acting within the scope of their duties." Wyo. Stat. Ann. § 1-39-110(a) (LexisNexis 2018 Supp.) The parties agree that the alleged negligence resulting in Ms. Gelok's damages occurred on February 23, 2015. They also agree that she complied with the claim procedure in Wyo. Stat. Ann. § 1-39-113 by presenting a written statement to the relevant governmental entities within two years of the *430 occurrence. However, they disagree whether, together, Wyo. Stat. Ann. §§ 1-39-113 and -114 can extend the two-year statute of limitations for a medical malpractice claim found in Wyo. Stat. Ann. § 1-3-107. The district court concluded that Wyo. Stat. Ann. § 1-3-107 governed and dismissed the medical malpractice claim, finding it time-barred. We agree and affirm dismissal of Ms. Gelok's negligence claim.
[¶ 9] Ms. Gelok argues that her Complaint was timely on two grounds. First, she argues that "a cause of action under the WGCA does not come into existence until" a claimant presents her claim to the governmental entity under Wyo. Stat. Ann. § 1-39-113 and that "the date of the occurrence of the underlying facts, acts or omissions are irrelevant." She relies on a federal district court case which stated that "a person has no cause of action under the WGCA until the person has properly presented a notice of claim." Phillips v. Boyd , 925 F.Supp.2d 1203, 1205 (D. Wyo. 2012). However, "the decisions of lower federal courts are not binding on state courts, even on issues of federal law," Dan Wiebold Ford, Inc. v. Universal Comput. Consulting Holding, Inc. , 142 Idaho 235, 127 P.3d 138, 143 (2005), and our own cases undermine the federal district court's conclusion. See Stroth v. N. Lincoln Cty. Hosp. Dist. , 2014 WY 81, ¶ 17, 327 P.3d 121, 128 (Wyo. 2014) ("The allegations asserted in Appellant's complaint indicate that her claim accrued on [the date the alleged medical negligence occurred]."); Rawlinson v. Cheyenne Bd. of Pub. Util. , 2001 WY 6, ¶ 13, 17 P.3d 13, 16 (Wyo. 2001) ("The statute of limitations begins to run when the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act....") (citing Anderson v. Bauer , 681 P.2d 1316, 1321 (Wyo. 1984) ); Davis v. City of Casper , 710 P.2d 827, 829 (Wyo. 1985) (holding that a tort is complete and actionable when the elements, duty, breach, proximate cause, and damage, are present). Although we have stated that presenting a claim to a governmental entity is a "condition precedent to suit" under the WGCA, we do not agree that "condition precedent to suit" equates to the creation of a cause of action. Ms. Gelok's cause of action accrued on the date of the occurrence, February 23, 2015.
[¶ 10] Second, Ms. Gelok argues that the notice and filing requirements of the WGCA extend the medical malpractice statute of limitations in Wyo. Stat. Ann. § 1-3-107. Before filing suit under the WGCA, a claimant has two years to present a written, itemized statement to the relevant governmental entity reciting the "time, place, and circumstances of the alleged loss or injury," among other information. Wyo. Stat. Ann. § 1-39-113 (LexisNexis 2017). The claimant then has one year from the date the claim is presented to the governmental entity to file a complaint. Wyo. Stat. Ann. § 1-39-114 (LexisNexis 2017). So, under §§ 1-39-113 and -114, a claimant may have up to three years to commence a court action against a governmental entity for its torts.
[¶ 11] Here, the alleged incident occurred on February 23, 2015. On May 12, 2016, Ms. Gelok timely submitted a claim under section 113 of the WGCA, which started the one-year statute of limitations period of section 114 running. On June 10, 2016, she also submitted a claim to the Medical Review Panel in compliance with Wyo. Stat. Ann. § 9-2-1518. The Medical Review Panel dismissed the claim on August 11, 2016, which the parties agree tolled Wyo. Stat. Ann. § 1-39-114 for 92 days.[4] Ms. Gelok urges us to adopt this timeline, which would make her deadline to file a complaint under the WGCA August 14, 2017 and result in a timely filed complaint. However, to do so would require us to ignore the statute of limitations governing health care claims, as well as the clear language of section 114, which states: "In no case shall the statute of limitations provided in this section be longer than any other applicable statute of limitations." Wyo. Stat. Ann. § 1-39-114.
[¶ 12] The legislature established a two-year statute of limitations for claims *431 arising from "the rendering of licensed or certified professional or health care services...." Wyo. Stat. Ann. § 1-3-107(a) (LexisNexis 2017). In discerning the legislature's intent, we construe "all statutes relating to the same subject or having some general purpose" in pari materia . Redco Constr. , 2012 WY 24, ¶ 26, 271 P.3d at 415-16. Thus, we construe the statutes of the WGCA together. We also "giv[e] effect to every word, clause, and sentence." Id . Although a claimant might have up to three years to file a complaint under sections 1-39-113 and -114 of the WGCA, these provisions do not extend shorter statutes of limitations.[5] We hold that the plain language of section 114, prohibiting its use to extend shorter statutes of limitations, compels us to apply the statute of limitations at Wyo. Stat. Ann. § 1-3-107.
[¶ 13] Under Wyo. Stat. Ann. § 1-3-107, Ms. Gelok had two years from February 23, 2015, to file a complaint. Section 9-2-1518 of the Wyoming Medical Review Panel Act of 2005, requiring medical malpractice claimants to file a claim with the Medical Review Panel, tolls the statute of limitations during the panel's review and for "thirty (30) days after the panel's final decision." Wyo. Stat. Ann. § 9-2-1518 (LexisNexis 2017). Thus, Ms. Gelok gained an additional 92 days for the time her claim was pending before the Medical Review Panel and for 30 days after its decision. Her deadline to file a complaint was May 26, 2017. The statute of limitations in section 107 barred her August 9, 2017 Complaint, and the district court properly dismissed it.
II. Did Ms. Gelok's Complaint allege sufficient facts to state a claim for relief under 42 U.S.C. § 1983 ?
[¶ 14] Aggrieved persons have a private cause of action under 42 U.S.C. § 1983 for "the deprivation of any rights, privileges, or immunities secured by the Constitution ..." by a person acting under color of state law. 42 U.S.C. § 1983 (2012) ; Garnett v. Coyle , 2001 WY 94, ¶¶ 16-17, 33 P.3d 114, 120 (Wyo. 2001). This Court has concurrent jurisdiction with the federal courts over 42 U.S.C. § 1983 actions. Metz v. Laramie Cty. Sch. Dist. No. 1 , 2007 WY 166, ¶ 28, 173 P.3d 334, 342 (Wyo. 2007). "[S]tate employment is generally sufficient to render the defendant a state actor" so long as there is a nexus between the employee's use of authority as a public employee and the alleged constitutional violation. Jojola v. Chavez , 55 F.3d 488, 493 (10th Cir. 1995) (citation omitted).
A. Standard of Review
[¶ 15] The district court applied the federal " Iqbal " standard to assess the sufficiency of the factual allegations in Ms. Gelok's Complaint. To survive a F.R.C.P. 12(b)(6) in federal court, a plaintiff must state a facially-plausible claim for relief, which requires factual allegations that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Under federal law, these facts must "[nudge the plaintiff's] claims across the line from conceivable to plausible" to state a claim for relief. Robbins v. Okla. ex rel. Dep't of Human Servs. , 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) ).
[¶ 16] But this Court has not adopted the federal "plausibility" standard for determining whether a complaint states a claim for relief. Hill v. Stubson , 2018 WY 70, ¶ 11 n.1, 420 P.3d 732, 737 n.1 (Wyo. 2018) (declining to decide whether to adopt the federal "plausibility" standard for determining whether a complaint states a claim for *432 relief); SH v. Campbell Cty. Sch. Dist. , 2018 WY 11, ¶ 5 n.1, 409 P.3d 1231, 1233 n.1 (Wyo. 2018) (declining to consider whether to adopt the heightened Iqbal standard applied by federal courts to motions to dismiss).[6] Mr. Mullenax has not offered vigorous argument for adoption of the Iqbal standard, and we therefore again decline to consider its adoption in this case. Rather,
We review a district court's decision granting a Rule 12(b)(6) motion to dismiss de novo . Bush Land Dev. Co. v. Crook Cty. Weed & Pest Control Dist. , 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017) ; Sorensen v. State Farm Automobile Ins. Co. , 2010 WY 101, ¶ 7, 234 P.3d 1233, 1235-36 (Wyo. 2010).
"When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief."
Herrig v. Herrig , 844 P.2d 487, 490 (Wyo. 1992) (citation omitted), quoted in Davis v. State , 910 P.2d 555, 560 (Wyo. 1996). Although dismissal is a drastic remedy which should be granted sparingly, a motion to dismiss "is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." Feltner v. Casey Family Program , 902 P.2d 206, 208 (Wyo. 1995) (quoting Mummery v. Polk , 770 P.2d 241, 243 (Wyo. 1989) ).
Whitham , 2018 WY 43, ¶ 13, 415 P.3d at 1267.
B. Wyoming State Hospital, Wyoming Department of Health, and Paul Mullenax in his Official Capacity
[¶ 17] The Eleventh Amendment of the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to apply equally to suits by citizens against their own states. Hans v. Louisiana , 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). It guarantees "that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Ala. v. Garrett , 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001). Likewise, "States retain immunity from private suit in their own courts" under the Amendment. Alden v. Maine , 527 U.S. 706, 754, 119 S.Ct. 2240, 2266, 144 L.Ed.2d 636 (1999). "Any claim against a government official in their 'official' capacity is, in actuality, a claim against the official's office, and thus the state, as the official is simply an agent of the government entity for which they work." Rigler v. Lampert , 248 F.Supp.3d 1224, 1241 (D. Wyo. 2017). The Department and the WSH are agencies of the State of Wyoming. The suit against Paul Mullenax in his official capacity is a suit against the State. Thus, these defendants are immune from suit unless: (1) the state consented to suit; (2) Congress expressly abrogated the state's immunity; or (3) Ms. Gelok sued the state officials pursuant to Ex Parte Young , 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which the United States Supreme Court held that private citizens may bring suit to enjoin state officials from enforcing unconstitutional laws. Rigler , 248 F.Supp.3d at 1241-42.
*433 [¶ 18] Ms. Gelok concedes that none of these exceptions applies. The State of Wyoming has not consented to suit under 42 U.S.C. § 1983. See Wyo. Stat. Ann. § 1-39-104 (LexisNexis 2017) (granting immunity to the State of Wyoming and its officials and employees unless expressly waived by the Act). The United States Supreme Court has held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity...." Will v. Michigan Dep't of State Police , 491 U.S. 58, 66, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45 (1989). Finally, Ex Parte Young provides no basis for an exception to immunity because Ms. Gelok's Complaint sought only monetary damages and not prospective injunctive relief. See Edelman v. Jordan , 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) ("When the action is in essence one for the recovery of money from the state, the state ... is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." (internal quotation marks omitted) ). Thus, we affirm the district court's dismissal of Ms. Gelok's 42 U.S.C. § 1983 claims against the WSH, the Department, and Mr. Mullenax in his official capacity.
C. Paul Mullenax in his Individual Capacity
[¶ 19] The district court ruled that Mr. Mullenax is entitled to qualified immunity. Qualified immunity protects government officials from civil liability if "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Abell v. Dewey , 870 P.2d 363, 367 (Wyo. 1994) (quoting Park Cty. v. Cooney , 845 P.2d 346, 351 (Wyo. 1992), cert. denied , 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) ). It is "immunity from suit rather than a mere defense to liability...." Id. (quoting Hunter v. Bryant , 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ) (emphasis in original). Its goal is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Chapman v. Wyo. Dep't of Corr. , 2016 WY 5, ¶ 21, 366 P.3d 499, 510 (Wyo. 2016) (quoting Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) ). To survive a motion to dismiss based on qualified immunity, a plaintiff must allege sufficient facts showing: (1) that the defendant's actions violated a constitutional right; and (2) that the right was clearly established at the time of the alleged misconduct. Id. at ¶ 21, 366 P.3d at 510 (quoting Pearson , 555 U.S. at 232, 129 S.Ct. at 515-16).
[¶ 20] Generally, state actors do not have an affirmative duty under the Due Process Clause to protect individuals from private violence. DeShaney v. Winnebago Cty. Dep't of Social Servs. , 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989). However, "[t]wo exceptions exist to this general principle: The special relationship doctrine and state-created danger theory." Schwartz v. Booker , 702 F.3d 573, 579 (10th Cir. 2012). Only the special relationship exception is relevant to this appeal. It provides that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney , 489 U.S. at 199-200, 109 S.Ct. at 1005. A custodial "special relationship" sufficient to trigger a State's duty to protect arises in the contexts of criminal incarceration, foster care, and involuntary mental commitment. Id. at 200, 109 S.Ct. 998, 1004 (citing Estelle v. Gamble , 429 U.S. 97, 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251 (1976) ; Youngberg v. Romeo , 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2457-58, 73 L.Ed.2d 28 (1982) ); Schwartz , 702 F.3d at 580.
[¶ 21] At the time of the incident giving rise to this appeal, Ms. Gelok was an involuntarily committed resident of the Wyoming State Hospital, of which Paul Mullenax is Administrator. This relationship triggers the "special relationship" exception, creating an affirmative duty in WSH to adequately protect Ms. Gelok's substantive due process rights. The district court properly concluded that Ms. Gelok's claim against Mr. Mullenax in his individual capacity could not survive a *434 12(b)(6) motion to dismiss on a respondeat superior theory. Iqbal , 556 U.S. at 676, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Estate of Booker v. Gomez , 745 F.3d 405, 435 (10th Cir. 2014) (" Section 1983... does not authorize liability under a theory of respondeat superior." (internal quotation marks omitted) ). However, supervisors may be "liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." Serna v. Colo. Dep't of Corr. , 455 F.3d 1146, 1151 (10th Cir. 2006). Accepting all facts stated in the Complaint as true and in the light most favorable to the plaintiff, we find that Ms. Gelok's assertion that Mr. Mullenax intentionally failed to provide her safe and humane living conditions is sufficient to allege Mr. Mullenax's own culpable involvement in violating her constitutional rights. Thus, we reverse the district court's dismissal of her 42 U.S.C § 1983 claim against Mr. Mullenax in his individual capacity.
[¶ 22] We first address the clearly established prong of the qualified immunity analysis. A constitutional right is clearly established when a reasonable government official in the defendant's position would understand that what he did violated the plaintiff's constitutional right at the time he did it. Chapman , 2016 WY 5, ¶ 22, 366 P.3d at 510 ; Casey v. W. Las Vegas Indep. Sch. Dist. , 473 F.3d 1323, 1327 (10th Cir. 2007) ; Pearson , 555 U.S. at 244, 129 S.Ct. at 822. "A clearly established right is one recognized by either the highest court in the state where the case arose, a United States Court of Appeals, or the United States Supreme Court." Cooney , 845 P.2d at 352. But see Dist. of Columbia v. Wesby , --- U.S. ----, ----, 138 S.Ct. 577, 591 n.8, 199 L.Ed.2d 453 (2018).
[¶ 23] The Supreme Court held in 1982 that involuntarily committed incompetent people have a right to adequate food, shelter, clothing, medical care, safety, reasonably nonrestrictive confinement conditions, and minimally adequate training. Youngberg , 457 U.S. at 322-24, 102 S.Ct. at 2461-62. The Court reiterated this right in 1989 in DeShaney , 489 U.S. at 199-200, 109 S.Ct. at 1005-06. In Yvonne L. v. New Mexico Department of Human Services , the Tenth Circuit stated, "in 1982 it was established that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 959 F.2d 883, 891 (10th Cir. 1992) (citation and internal quotation marks omitted). That case involved two children committed to the State foster care system. Id. at 885. Relying in part on Youngberg , the court held that children had a clearly established right to reasonable safety while in foster care. Id. at 891. "If Youngberg v. Romeo clearly established such a right for foster care children in 1982, it certainly clearly established such a right for developmentally disabled individuals, because such individuals provided the basis for the Supreme Court's holding in Youngberg v. Romeo ." A.M. ex rel. Youngers v. N.M. Dep't of Health , 65 F.Supp.3d 1206, 1269 (D. N.M. 2014).
[¶ 24] The State correctly observes that Youngberg is not precisely like this case. The plaintiff in Youngberg "suffered injuries on at least sixty-three occasions" at a state hospital, 457 U.S. at 310, 102 S.Ct. at 2455, whereas here, Ms. Gelok's injuries occurred within a single 25-hour period. However, the precise action in question need not have previously been held unlawful to be clearly established; rather, only "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Youngberg's holding that involuntarily committed persons have a right to adequate shelter, medical care, and safety is sufficiently clear to put a reasonable official on notice that it is impermissible to allow an incompetent patient to be left unattended for 25 hours in an ant-infested hospital without food, water, or rest and then to misdiagnose her injuries. Thus, we find that a clearly established constitutional right existed in this case.
*435 [¶ 25] Next, we turn to whether the allegations in Ms. Gelok's Complaint, if proven, show that Mr. Mullenax violated the right outlined in Youngberg . In Youngberg , the Supreme Court adopted the professional judgment standard to measure whether a State adequately protected the rights of the involuntarily committed. 457 U.S. at 321, 102 S.Ct. at 2461. This standard requires professionals to make "professionally acceptable choices" in protecting involuntarily committed peoples' right to safe and humane living conditions. Id. It is deferential in that a professional's decisions are "presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323, 102 S.Ct. at 2462 The standard applies to those "competent, whether by education, training or experience, to make the particular decision at issue," id . at 323 n.30, 102 S.Ct. at 2462 n.30, including "primary care professionals, supervisors, and administrators named as defendants." Shaw by Strain v. Strackhouse , 920 F.2d 1135, 1139 (3d Cir. 1990). As the Administrator of the state hospital, Mr. Mullenax qualifies as a professional and is held to this standard.
[¶ 26] In a case alleging that a professional's inaction resulted in violation of an involuntarily committed person's constitutional rights, the professional judgment standard can be difficult to apply because it speaks in terms of affirmative "decisions" and "choices." Perhaps that is why the parties and the district court seemingly alternate between the professional judgment standard and the deliberate indifference standard in assessing Mr. Mullenax's conduct. However, the deliberate indifference standard applies in the criminal incarceration context and requires only that State officials not be deliberately indifferent to prisoners' serious medical needs. Estelle , 429 U.S. at 106, 97 S.Ct. at 292. It is even more deferential to State officials than the professional judgment standard in that it "requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent." Shaw by Strain , 920 F.2d at 1145. Youngberg rejected application of the Estelle deliberate indifference standard to the involuntarily committed, stating that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg , 457 U.S. at 321-22, 102 S.Ct. at 2461. Thus, here "defendants have an affirmative obligation to discover the needs of mentally retarded patients for protection and to respond to those needs in an adequate manner," while the "deliberate indifference" standard does not impose any affirmative duty of discovery. Romeo v. Youngberg , 644 F.2d 147, 177 (3d Cir. 1980) (Seitz, C.J., concurring).[7]
[¶ 27] Both the professional judgment and deliberate indifference standards of care are subject to the overarching "shock the conscience" test a plaintiff must satisfy to make out a substantive due process claim. A professional violates an involuntarily committed person's substantive due process rights when he fails to exercise professional judgment to a degree that shocks the conscience. In County of Sacramento v. Lewis , the Supreme Court held "that the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." 523 U.S. 833, 847, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043 (1998) (citation and internal quotation marks omitted). Lewis involved a police officer who pursued two teenage boys on a motorcycle, allegedly with deliberate indifference to or reckless disregard for their right to life, in violation of the Due Process Clause of the Fourteenth Amendment. Id. at 838, 118 S.Ct. at 1712. The Court devised a "culpability spectrum" and explained that "the *436 Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," while "behavior at the other end of the culpability spectrum ... would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. However, not all conduct falls neatly on one end of the spectrum or the other, and conduct within the "middle range ... something more than negligence but less than intentional conduct.... may be actionable under the Fourteenth Amendment." Id. Within this middle range, state officials are held to Estelle's deliberate indifference standard in the criminal incarceration context and to Youngberg's professional judgment standard in the involuntarily committed context. See id. at 850-51, 852 n.12, 118 S.Ct. at 1718-19, 1719 n.12. Thus, the correct question to ask in this involuntary commitment case is whether Ms. Gelok has sufficiently alleged that Mr. Mullenax failed to exercise professional judgment to a degree that shocks the conscience. See Johnson ex rel. Estate of Cano v. Holmes , 455 F.3d 1133, 1143 (10th Cir. 2006) ("[F]ailure to exercise professional judgment[ ] requires more than mere negligence: it requires abdication of professional responsibility ... sufficient to shock the conscience." (citation and internal quotation marks omitted) ).
[¶ 28] Ms. Gelok alleged sufficient facts to state a claim for relief under 42 U.S.C. § 1983 under Wyoming's motion to dismiss standard. She alleged that Mr. Mullenax intentionally deprived her of her right to safe and humane living conditions. According to Ms. Gelok, he intentionally allowed her to sit in the same position for 25 hours; failed to provide her with food, water, rest, or bathroom breaks; and did not ensure that she received adequate medical care. She also alleged that he intentionally ran a filthy, ant-infested hospital, contributing to her injuries. Taking these allegations as true and in the light most favorable to the plaintiff, we cannot say that it is certain from the face of the Complaint that Mr. Mullenax exercised accepted professional judgment. Taking the allegations in the Complaint as true and giving them all reasonable inferences, such intentional conduct is sufficient to allege that Mr. Mullenax, through his own individual actions, abdicated his professional responsibilities to a degree that shocks the conscience. We hold that Ms. Gelok's Complaint alleged sufficient facts to state a claim for relief under 42 U.S.C. § 1983 against Mr. Mullenax in his individual capacity.
CONCLUSION
[¶ 29] Wyo. Stat. Ann. § 1-3-107 barred Ms. Gelok's negligent health care claim, and the district court properly dismissed it. The district court also properly dismissed the 42 U.S.C. § 1983 claims against the WSH, the Department, and Paul Mullenax in his official capacity on Eleventh Amendment immunity grounds. However, the allegation that Mr. Mullenax intentionally failed to provide Ms. Gelok with safe and humane living conditions speaks to his own culpable involvement in violating her constitutional rights and is sufficient to state a claim for relief under 42 U.S.C. § 1983 against him in his individual capacity. Affirmed in part and reversed in part.

Wyoming Guardianship Corporation instituted the suit on Ms. Gelok's behalf, but we refer to the Appellant as Ms. Gelok.

We accept the allegations in Ms. Gelok's Complaint as true. See Whitham v. Feller , 2018 WY 43, ¶ 4, 415 P.3d 1264, 1265 (Wyo. 2018).

In addition to the WSH, the Department, and Paul Mullenax, Ms. Gelok asserted these claims against John Does 1-10 in their official and individual capacities. They have not been served, and the claims against them remain unresolved.

We need not address the parties' assumption that the Wyo. Stat. Ann. § 9-2-1518 tolling provision applies to the statute of limitations in Wyo. Stat. Ann. § 1-39-114 because of our conclusion that Wyo. Stat. Ann. § 1-3-107 bars Ms. Gelok's claim.

We look to the time allowed under sections 113 and 114 combined because there would never be a situation in which section 114's limitation, standing alone, would have any applicability. No Wyoming statute of limitations is less than one year. See Wyo. Stat. Ann. §§ 1-3-101 through 113 (LexisNexis 2017). "[W]e must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation." In Interest of ECH , 2018 WY 83, ¶ 24, 423 P.3d 295, 303 (Wyo. 2018) (citations omitted). Considering sections 113 and 114 together allows the phrase "In no case shall the statute of limitations provided in this section be longer than any other applicable statute of limitations" to operate when the potential three-year deadline they impose exceeds another applicable statute of limitations.

W.R.C.P. Rule 12(b)(6) is "virtually identical to its federal counterpart"; therefore, federal authority interpreting it is persuasive. See Baker v. Speaks , 2013 WY 24, ¶ 33, 295 P.3d 847, 855 (Wyo. 2013). However, "[t]he general rule ... is that federal law takes the state courts as it finds them. For example, state rules about the ways in which claims for relief ... must be asserted may ordinarily be applied also to federal claims," provided that state procedural rules are not so demanding as to nullify asserted federal rights. Henry M. Hart, Jr., The Relations Between State and Federal Law , 54 Colum. L. Rev. 489, 508 (1954) (citing Davis v. Wechsler , 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143 (1923) ; Patterson v. Alabama , 294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082 (1935) ; Herndon v. Georgia , 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530 (1935) ; Parker v. Illinois , 333 U.S. 571, 68 S.Ct. 708, 92 L.Ed. 886 (1948) ).

Chief Judge Seitz's concurrence provided the basis for the Supreme Court's adoption of the professional judgment standard in Youngberg v. Romeo . Youngberg , 457 U.S. at 321, 102 S.Ct. at 2461 ("We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance....").